IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW MEXICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-CR-1400-JB |
| ) | |
| **TROY DON TESTON,** ) | |
| ) | |
| Defendant ) | |

**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

Troy Don Teston respectfully moves this court to dismiss the Superseding Indictment [Doc. 34] against him. First, Count One of the Superseding Indictment is unconstitutional as applied to Mr. Teston under the Second Amendment of the United States Constitution under *New York States Rifle and Pistol Association v. Bruen,* 142 S. Ct. 2111 (2022). Second, Counts Two and Three of the Superseding Indictment fail to state an offense because he did not possess a "firearm" as defined by the relevant statute.

BACKGROUND

In October of 2020, officers with the Portales Police Department conducted a random inspection of Mr. Teston's work truck and saw what they suspected were materials for an "explosive device." Mr. Teston explained that he used the materials to blow up gopher holes. Though he had several CO2 cannisters, only one of them had explosive materials in it. Officers executed a search of his vehicle and also uncovered some black powder. They executed a search of his home and uncovered other materials, including some wire.

1

Mr. Teston was initially charged with violating 18 U.S.C. § 842(i) for being a felon in possession of explosives (Count One) and 26 U.S.C. §§ 5841(a), 5845(a)(8), 5861(d) and 5871 for possession of an unregistered firearm (destructive device) (Count Two) (Indictment) (Doc. 2). In a superseding indictment filed on March 15, 2023, he was also charged for having made a firearm (destructive device) in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

ARGUMENT

**I. After *Bruen*, 18 U.S.C. § 842(i) is unconstitutional as applied to Mr. Teston.**

Under the Second Amendment, the Constitution presumptively protects "the right of the people to keep and bear Arms." Const Amend. II; *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *New York Rifle & Pistol Ass'n, Inc., v. Bruen*, the Supreme Court made clear that when the government regulates the possession of arms, it "must justify its regulation by demonstration that it is consistent with the Nation's historical tradition" of regulation. 142 S. Ct. 2111, 2129-30 (2022). In determining whether a regulation is constitutional, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding" by using analogical reasoning, which "requires [] that the government identify a well-established and representative historical analogue[.']" *Id.* at 2131. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 2130 (quoting *Koningsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 110 (1961)).

In light of *Bruen*, 18 U.S.C. § 842(i) is unconstitutional as applied to Mr. Teston. While the Court has noted "longstanding prohibition on the possession of *firearms* by felons," *Heller*, 554 U.S. at 626 (emphasis added), there is no such longstanding prohibition on the possession of explosives, particularly the kind of materials Mr. Teston allegedly possessed. Nor does this longstanding prohibition apply to non-violent felons like Mr. Teston.

### A. The history of regulating possession of firearms by dangerous persons does not include possession of the "explosives" Mr. Teston had.

Even in acknowledging the "longstanding prohibition" against the possession of firearms by convicted felons, the Supreme Court was careful to detail that it did "not undertake an exhaustive historical analysis [] of the full scope of the Second Amendment." *Id.* at 627. At the time of ratification, though, the possession of something as innocuous as black powder would not have fallen outside the scope of the Second Amendment, regardless of a person's status as a felon. The "longstanding prohibition" referred to by the Court appears to find its origin in founding era documents suggesting that those who pose "a real danger of public injury" might not benefit from Second Amendment protections. Jonathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution 326 (2d ed. 1891) (emphasis added); 2 Bernard Schwartz, The Bill of Rights: Documentary History 675, 681 (1971). As then-Judge Barrett noted, "[t]he concern common" to founding-era suggestions related to the prohibition on dangerous people possessing firearms "is about threatened violence and the risk of

3

public injury." *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) *abrogated by Bruen*, 142 S. Ct. 2111 (2022) (Barrett, J., Dissenting).

This animating concern does not extend to the regulation of explosives, particularly the types of explosives found in Mr. Teston's possession. Most of the black powder barely ignited, as indicated by the test burns conducted by law enforcement. Even black powder that could burn very quickly and arguably function as some type of "explosive" does not pose the kind of threat of physical injury that framers suggested might fall outside the scope of Second Amendment protections when possessed by "dangerous" individuals. There are plenty of incendiary devices that are "explosives" under the historic application of § 842(i), but do not actually explode, and in any event do have the capacity to cause serious injury. *See, e.g., United States v. Markey*, 393 F.3d 1132 (10th Cir. 2004) (holding that the Government "need not show that a device is actually able to explode to prove that a defendant knowingly possessed an explosive under § 842(i)(1)"). After *Bruen*, application of § 842(i) in these kinds of scenarios is unconstitutional. Application of § 842(i) to Mr. Teston specifically is unconstitutional because, though he was a felon, he posed no colorable threat of violence or public injury through his possession of some black powder, small C02 cannisters, and wire.

While the regulation of possession of firearms may belong to the historical tradition identified by scholarship sources, it is clear from legislative history that the regulation of explosives does not. Indeed, the statutory scheme regulating the possession of firearms is an entirely different entity than the statutory scheme

regulating the possession of explosives. *See United States v. Ressam,* 553 U.S. 272 (2008) (noting differences between regulation of explosives and firearms). 18 U.S.C. § 842(i) was enacted as part of the Organized Crime Control Act of 1970. Though parts of it were modeled after provisions of the Gun Control Act of 1968, Title XI of the Organized Crime Control Act, which included the provisions codified at § 842, was enacted with the purpose of "protect[ing] interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from explosives misuse and unsafe or insecure storage" without placing an unnecessary burden on lawful uses. H.R.Rep.91-1549, 91st Cong.2d Sess. The "avowed purpose for enactment of the statute was to combat bombing by terrorists and organized crime," though those groups were not the exclusive targets of the Act. *United States v. Hepp*, 656 F.2d 350, 351 n.2 (8th Cir. 1981) (citing Explosives Control: Hearings on H.R. 17154, 16699 and 18673 Before Subcomm. No. 5 of the House Comm. On the Judiciary, 91st Cong. 2d Sess., 64-67, 91-94, 287-288)); *see also United States v. Schwanke,* 598 F.2d 575, 578 (10th Cir. 1979) (discussing the legislative intent to protect the nation against "bombings and the threat of bombings" in strengthening regulations of explosives.) By contrast, in enacting the Gun Control Act of 1968, "Congress . . . sought broadly to keep firearms away from persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). Put simply, the two statutory schemes had different aims, and are not grounded in the same historical justification.

### B. The prohibition on possession of firearms by dangerous persons cannot apply to non-violent felons like Mr. Teston.

18 U.S.C. § 842(i) is also unconstitutional as applied to Mr. Teston because his prior felony convictions were for nonviolent offenses. Under the test articulated in *Bruen*, felons who have been convicted of nonviolent offenses cannot lose their Second Amendment rights by virtue of their prior convictions. "The best historical support for a legislative power to permanently dispossess all felons would be founding-era laws explicitly imposing—or explicitly authorizing the legislature to impose—such a ban. But at least this far, scholars have not been able to identify any such laws." *Kanter*, 919 F.3d at 454 (Barret, J., dissenting); *see* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249, 257 (2020) ('[T]here is no historical basis for denying nonviolent felons the right to keep and bear arms."). To the extent that there is an identifiable historical tradition of legislatures prohibiting dangerous people from possessing firearms, that tradition does not embrace non-violent offenders. *Id.* at 451-469 (Barrett, J., dissenting) ("History is consistent with common sense: it demonstrates that legislatures have the power to prohibit people from possession guns. But that power extends only to people who are *dangerous*.) (emphasis in original).

Mr. Teston's predicate convictions were for Texas aggravated assault with a deadly weapon and possession of a controlled substance. Neither conviction qualifies as a "crime of violence." A controlled substance offense is nonviolent in nature. And Texas aggravated assault is not a crime of violence because it can be

6

committed with a *mens rea* of recklessness which, means that it is not categorically a crime of violence. *See United States v. Gomez Gomez*, 23 F.4th 575 (5th Cir. 2022). In other words, Texas aggravated assault can be committed without the use of physical force against the person of another. *Id.* The fact of this conviction thus does nothing to prove that an individual is violent or dangerous. Mr. Teston's conviction under that statute does nothing to indicate that he might be the type of "dangerous" person not covered by the Second Amendment. As such, in light of *Bruen*, his felon-status does not authorize the government to strip him of his Second Amendment rights. In sum, here the government cannot meet its burden of proving that the charged conduct is consistent with the nation's history of firearm regulation, and the regulation is unconstitutional as applied to Mr. Teston.

**II. Counts Two and Three of the Superseding Indictment fail to state an offense.**

    **A. Intent to use the device in question as a weapon is an element required for conviction under 26 U.S.C. § 5841(a).**

26 U.S.C. § 5841 requires the registration of "firearms." 26 U.S.C. § 5861(f) prohibits the "making" of a firearm without complying with certain requirements. For purposes of both sections, the term "firearm" is defined to include "a destructive device." 26 U.S.C. § 5845(a)(8). In turn, a "destructive device" is defined as:

> (1) **any explosive, incendiary,** or poison gas (A) **bomb,** (B) grenade, (C) rocket having propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E)

> mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projective by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and **(3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.**

26 U.S.C. § 5845(f). For purposes of all three subsections, "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon[.]" *Id*

Components of an explosive cannot qualify as a "destructive device" "absent proof of intent to use such components as a weapon." *United States v. Fredman*, 833 F.2d 837, 840 (9th Cir. 1987). It is true that the Tenth Circuit has held that the question "whether a **device** was designed or redesigned for use as a weapon is an affirmative defense, not an element that must be alleged in the indictment." *United States v. La Cock*, 366 F.3d 883, 889 (2004). But this case, and the Tenth Circuit precedent it relied upon, addressed the intent for use of an already assembled device, not the component parts of a potential device. *See United States v. Neal,* 692 F.2d 1296, 1304 (10th Cir. 1982) ("Neal was charged with possession of an assembled device under subparagraph (1)"). In such instances, the requirement that the device in question be designed or redesigned for use as a weapon may be

evidenced by the existence of the device itself.[1] The subjective intent for the use of that item may become an affirmative defense, because circumstantial evidence of the weapon's existence already goes to establishing the intent element set forth in the statute.

By contrast, where the offending items are commercially available component parts, as described at § 5845(f)(3), there is no circumstantial evidence that the person possessed the requisite intent to use them as a weapon. This was the scenario presented to the Ninth Circuit in *United States v. Fredman*. There, Mr. Fredman possessed two bundles of commercial detonator cord, three commercial detonator fuses, and two commercial igniters. 833 F.2d at 827. Like Mr. Teston, he was charged with the possession of unregistered firearms. The Ninth Circuit held that in this setting, "[i]ntent is a necessary element, absent proof of original design or redesign for use as a weapon." *Id.* at 839; *see also United States v.*

---

[1] The Eleventh Circuit has held that the government must prove that an item was designed for use as a weapon even for a fully assembled device, treating this piece of intent as an element for conviction under all relevant subparagraphs of the definition. See *United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004). The court explained that even proof that a device might explode:
> [i]s not enough to bring the device within the statutory framework. Although the statute does define 'destructive device' to include explosive devices []. It also explicitly excludes from coverage any explosive device not designed for use as a weapon. Thus, a device that explodes is not covered by the statute merely because it explodes. Statutory coverage depends upon proof that a device is an explosive plus proof that it was designed as a weapon. No explosive can constitute a destructive device within the meaning of the statute unless it has this 'plus factor.'

*Id.* This articulation agrees with the plain text of the statute.

9

*Morningstar*, 456 F.2d 278, 280-81 (4th Cir. 1972) (whether unassembled components of explosives, including black powder, are subject to regulation depends on the use for which they are intended). Indeed, in *Neal*, the Tenth Circuit implicitly acknowledged that intent is an element, which must be alleged in the indictment, when the conduct at issue falls under subparagraph (3) by concluding that the count in question "was not insufficient for its failure to allege that the combination of parts was 'designed or intended' for use in converting any device into a destructive device" specifically because the conduct fell under subparagraph (1). Under Tenth Circuit precedent, then, intent is a necessary element for conviction of the conduct at issue here. [2]

---

[2] The Supreme Court's recent approach to statutory interpretation in *Ruan v. United States* confirms this reading of the statute. There, the Court determined that the phrase "except as authorized" in 18 U.S.C. § 841's prohibition on dispensing controlled substances requires the government to prove that a doctor knew or intended that their prescription was unauthorized. In other words, when the exception written into the statute is at play, it carries its own *mens rea* requirement. Though the Court noted that the exception was different than an element in some ways, it reasoned that it is "sufficiently like an element in respect to the matter at issue here as to warrant similar legal treatment," in no small part due to the "crucial role authorization (or lack thereof) plays in distinguishing morally blameworthy conduct from socially necessary conduct[.]" *Ruan v. United States*, 142 S. Ct. 2370, 2380 (2022). Similarly, the possession of commercially available components of a potential incendiary or explosive bomb could be, and likely often is, part of completely innocuous conduct. Or, in the case of Mr. Teston, it represents a "socially necessary" part of living and working in a rural area. *Ruen* teaches that, when an exception applies to render conduct non-criminal, the aspect of that conduct that would render it criminal becomes something that must be proven to a jury beyond a reasonable doubt. Similarly, here, when the conduct at issue falls under subparagraph (3), intent to design or redesign for us as a weapon must be an element. Otherwise, a person would be subject to the registration requirement for any number of commercially available tools and items used regularly in daily life.

Furthermore, any holding to the contrary would render the statutes void for vagueness. The Due Process Clause of the Constitution prohibits the government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). If the statutory scheme at issue here is read to require the registration of any and all commercial materials that could conceivably be assembled into an explosive device as "firearms," and prohibit the possession of those items because somehow that means the person has "made" a "firearm," then scores of citizens engaging in innocuous behavior could face criminal liability without having any reason to suspect that they might be violating the law. Common sense dictates that a person driving around with lawfully obtained, commonplace materials would not suspect that they would be subject to a registration requirement for possessing a "firearm," let alone a criminal penalty for failing to register that "firearm" or for having made a "firearm." The fact that § 5845(f) requires such materials to be "designed or redesigned for use as a weapon" saves it from embracing wholly innocent behavior and prevents arbitrary enforcement.

**B. The government cannot prove that Mr. Teston possessed the requisite intent.**

The black powder, CO2 cannisters, wire, screws, metal, and wire possessed by Mr. Teston were, at best, component parts of a hypothetical explosive or

11

incendiary bomb.³ Because the government cannot prove that he intended to use them as a weapon, he cannot be charged with the offenses listed in Count Two.

The Tenth Circuit has recognized that in certain circumstances a district court may dismiss an indictment pretrial if the evidence is insufficient to support the charge. "[I]t is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case." *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991). A district court may dismiss an indictment pretrial when, given the undisputed facts, the government cannot prove its case beyond a reasonable doubt as a matter of law. *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).

Here, the government cannot establish, as a matter of law, that Mr. Teston possessed the intent to render the items in his possession a "destructive device" subject to § 5841(a)'s registration requirement or regulated under § 5861(f). There is no evidence that Mr. Teston intended to use the items in question as a weapon; indeed, the available evidence suggests the opposite. He explained to law enforcement that he put some of the materials in gopher holes. It is hard to imagine

---

³ In Count Three of the of the Superseding Indictment, the Government alleges that the items Mr. Teston possessed constituted a destructive device under both subsections (f)(1) and (f)(3). There is no evidence to suggest that Mr. Teston possessed anything like an explosive, incendiary or gas bomb, as described in § 5645(f)(1). In fact, Count Three itself proceeds to list the various components he possessed, failing to explain how this amounts to a "device" that could be covered by (f)(1). The items he possessed were, at best, components that could be converted into such a device and, as such, could only conceivably be covered by the statutory scheme by way of the definition set forth in subsection (f)(3).

how the items found in Mr. Teston's possession could conceivably be intended for use as a weapon, particularly in light of the non-explosive nature of most of the black powder. Even the possibility that some hypothetical device constructed of the items in his possession could explode does not satisfy the requirement that the device be *designed* for use as a weapon. As such, it has failed to allege an offense in Counts Two and Three of the Superseding Indictment.

## CONCLUSION

For the reasons articulated above, Mr. Teston respectfully requests that this court dismiss the Superseding Indictment against him.

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd NW, Suite 501
Albuquerque, New Mexico 87102
(505) 346-2489
Fax (505) 346-2494

*Electronically filed March 17, 2023*
/s/ Stephen Taylor
Assistant Federal Public Defender