# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                            No. CR 22-1400 JB

TROY DON TESTON,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States of America's Motion in Limine to Preclude Evidence of Defendant's Subjective Intent in Making or Possessing the Device, filed April 24, 2023 (Doc. 61)("Motion in Limine").  The Court held a hearing on the Motion in Limine, as well as on other motions, on April 26, 2023.  See Clerk's Minutes at 1, filed April 26, 2023 (Doc. 73).  The primary issues are: (i) whether evidence of Defendant Troy Don Teston's subjective intent in assembling his device is relevant in applying the statutory exception to 26 U.S.C. § 5845(f)(1) for devices which are "neither designed or redesigned for use as a weapon"; (ii) whether evidence that the device was poorly constructed is relevant to whether the device is a destructive device under 26 U.S.C. § 5845(f)(1); and (iii) whether evidence that the amount of powder in the device made the device harmless is relevant to whether the device is a destructive device under 26 U.S.C. § 5845(f)(1).  The Court concludes that: (i) because Teston is charged with possessing an assembled device under 26 U.S.C. § 5845(f)(1), his subjective intent in designing the device is not relevant to the statutory exception's application, and, therefore, it does not bear on whether Teston possessed a "destructive device" under that statute, and should be excluded; (ii) under relevant case law, evidence that Teston's device was poorly constructed is irrelevant in

determining whether 26 U.S.C. § 5845(f)(1) applies, and should therefore be excluded; and (iii) relevant case law does not bar presenting evidence that the amount of powder in Teston's device rendered it harmless as part of the analysis of the device's objective qualities, and therefore should not be excluded.  Accordingly, the Court grants in part and denies in part the Motion in Limine.

## PROCEDURAL HISTORY

The United States filed an Indictment on August 23, 2022 (Doc. 1), against Teston containing two counts: (i) Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); and (ii) Count 2, Possession of an Unregistered Firearm (Destructive Device) under 26 U.S.C. §§ 5841(a), 5845(a)(5), 5861(d), and 5871.  See Indictment at 1-2.  The Indictment alleged that Teston, a felon with prior convictions for aggravated assault with a deadly weapon and possession of controlled substances, "knowingly possessed explosives," and "knowingly possessed a firearm, that is, a destructive device, and said firearm was not registered to him in the National Firearms Registration and Transfer Record."  Indictment at 1.

On March 15, 2023, the United States filed a Superseding Indictment, filed March 15, 2023 (Doc. 34).  In the Superseding Indictment, the Grand Jury charged Teston with three counts: (i) the original Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); (ii) an amended Count 2, Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record under 26 U.S.C. §§ 5841, 5861(d) and 5871; and (iii) a new Count 3, Making of an Unregistered Firearm under 26 U.S.C. §§ 5841, 5861(f), and 5871.  See Superseding Indictment at 1-2.  The allegations in the Superseding Indictment's Count 1 were unchanged from those in the Indictment.  Compare Indictment at 1, with Superseding Indictment at 1.  The amended Count 2 stated that Teston "knowingly possessed a firearm, a destructive device, more fully described as a

flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, that was not registered in the National Firearms Registration and Transfer Record."  Superseding Indictment at 1-2.  The new Count 3 stated that Teston made the "firearm, specifically, a destructive device" that Count 2 described, and that it is "a destructive device as defined pursuant to 26 U.S.C. §§ 5845(a)(8), (f)(1), and (f)(3), that was not registered in the National Firearms Registration and Transfer Record."  Superseding Indictment at 2.

On April 19, 2023, the United States filed its Second Superseding Indictment, filed April 19, 2023 (Doc. 55).  In the Second Superseding Indictment, the Grand Jury charges Teston with four counts: (i) the original Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); (ii) an amended Count 2, Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record under 26 U.S.C. §§ 5841, 5861(d) and 5871; (iii) an amended Count 3, Making of an Unregistered Firearm under 26 U.S.C. §§ 5841, 5861(f), and 5871; and (iv) a new Count 4, Felon in Possession of Ammunition under 18 U.S.C. §§ 922(g)(1) and 924. See Second Superseding Indictment at 1-3.   The allegations in the Second Superseding Indictment's Count 1 are unchanged from those in the Indictment and Superseding Indictment:

> Teston, knowing that he had been convicted of at least one crime punishable by imprisonment for a term exceeding one year, specifically:
>
> > (1)   aggravated assault with a deadly weapon, and
> >
> > (2)   possession of a controlled substance,
>
> knowingly possessed explosives in and affecting commerce.
>
> In violation of 18 U.S.C. § 842(i).

Second Superseding Indictment at 1. The amended Count 2 adds to the Superseding Indictment's allegations references to 26 U.S.C. § 5845(a) and (f):

> Teston[] knowingly possessed a firearm as defined by 26 U.S.C. § 5845(a) and (f), that is, a destructive device, made from a flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, that was not registered in the National Firearms Registration and Transfer Record.

> In violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

Second Superseding Indictment at 2. The amended Count 3 eliminates specific reference to the 26 U.S.C. §§ 5845(f)(3), instead referencing only 26 U.S.C. §§ 5845(a)(8) and (f)(1):

> Teston[] knowingly made a firearm as defined by 26 U.S.C. § 5845(a) and (f), that is a destructive device, made from a flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, which is a destructive device as defined pursuant to 26 U.S.C. §§ 5845(a)(8) and (f)(1), that was not registered in the National Firearms Registration and Transfer Record.

> In violation of 26 U.S.C. §§ 5841, 5861(f) and 5871.

Second Superseding Indictment at 2. The new Count 4 alleges that Teston was a felon in possession of ammunition:

> Teston, knowing that he had been convicted to at least one crime punishable by imprisonment for a term exceeding one year, specifically:

> (1)     aggravated assault with a deadly weapon, and

> (2)     possession of a controlled substance,

> knowingly possessed ammunition in and affecting commerce.

> In violation of 18 U.S.C. §§ 922(g)(1) and 924.

Second Superseding Indictment at 2. The Second Superseding Indictment additionally adds three Forfeiture Allegations. See Second Superseding Indictment at 3. The First Forfeiture Allegation states:

Upon conviction of any offense in violation of 18 U.S.C. § 842(i), . . . Teston[] shall forfeit to the United States, pursuant to 18 U.S.C. §§ 844(c)(1), 981(a)(1)(C), 982(a)(2)(B), and 28 U.S.C. § 2461(c), any explosive materials involved or used or intended to be used in the offense, and any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to:

a.      double base smokeless powder.

Second Superseding Indictment at 3.  The Second Forfeiture Allegation states:

Upon conviction of any offense in violation of 26 U.S.C. § 5861, . . . Teston[] shall forfeit to the United States, pursuant to[]26 U.S.C. § 5872 and 28 U.S.C. § 2461(c), any firearms involved in the commission of the offense(s), including, but not limited to:

a.      double base smokeless powder.

Second Superseding Indictment at 3.  The Third Forfeiture Allegation states:

a.          Upon conviction of any offense in violation of 18 U.S.C. § 922(g), . . . Teston[] shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the commission of the offenseI, including, but not limited toa.     double base smokeless powder.

Second Superseding Indictment at 3.

On April 24, 2023, the United States filed the Motion in Limine.  See Motion in Limine at 1-6.  In the Motion in Limine, the United States contends that, because Teston is on trial for possessing an assembled device under 26 U.S.C. § 5845(f)(1), rather than unassembled components under 26 U.S.C. § 5845(f)(3), his subjective intent in designing the device is irrelevant in determining whether the device at issue is a destructive device under the operative statute.  See Motion in Limine at 1.  The United States emphasizes that 26 U.S.C. § 5845(f)(1), unlike § 5845(f)(3), lacks language referencing the defendant's intent, and that, accordingly, "when a defendant is charged for making or possessing an assembled destructive device under (f)(1), courts consistently hold that his or her subjective intent is irrelevant."  Motion in Limine at 2.  In support,

the United States cites case law from the United States Court of Appeals for the Second Circuit,

the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for

the Seventh Circuit, and the United States Court of Appeals for the Ninth Circuit.  See Motion in

Limine at 2-3.  The United States emphasizes that, "while Defendant might be able to argue about

the device's objective design or method of operation as an affirmative defense -- whatever that

argument may be -- he should not be permitted to argue that his subjective intent informs the

decision whether it was designed or redesigned for use as a weapon."  Motion in Limine at 4.  The

United States also states the following:

> Although Defendant's subjective intent is irrelevant, that is not to say that
> his *statement* that he intended to use the device to blow up gophers lacks relevancy
> overall.  The United States may be required to prove that Defendant knew of the
> specific characteristics or features of the device that required it to be registered.  *See*
> Tenth Circuit Pattern Jury Instruction 2.91.  Defendant's admission that he intended
> to use the device in a destructive manner goes to the knowledge requirement of that
> element.  That is, Defendant knew the device functioned by explosion.  But that is
> far different than Defendant being permitted to argue that he lacks criminal liability
> because he intended to use it as a "tool for managing rodents."  Accordingly, even
> if the Government must rely on Defendant's statement to prove that element, that
> does not open the door to Defendant making an irrelevant argument that would
> invite the jury to acquit on an improper basis.

Motion in Limine at 4 (emphasis in original).  The United States also characterizes "suggestions

by Defense counsel that the amount of powder in the device rendered it harmless," and "any

argument, question, or suggestion that the device was poorly constructed," as "irrelevant."  Motion

in Limine at 4-5.  The Motion in Limine concludes with a request that the Court "order Defendant,

his counsel, and all defense witnesses to refrain from asking any question, introducing any

evidence, or making any statement or argument that, either directly or indirectly, implicates":

(i) Teston's subjective intent in designing the device; (ii) the amount of powder in the device

making it harmless; or (iii) the device being poorly constructed.  Motion in Limine at 5.

The Court held a hearing on the Motion in Limine, as well as other motions, on April 26, 2023. See Clerk's Minutes at 1. On a question from the Court, Teston clarified that the United States is proceeding on a theory that the device was an assembled device, rather than component parts, and that the device is a "cricket device." Draft Transcript of April 26, 2023, Hearing at 11:1-5 (Court, Taylor)(taken April 26, 2023)("April 26 Tr.")[1]; id. at 11:11-19 (Court, Taylor). Teston then expressed his argument that Teston's subjective intent as the device's designer is relevant to whether the device is considered a destructive device. See April 26 Tr. at 11:21-12:12 (Taylor). Teston proceeded to support his argument with reference to United States v. Oba, 448 F.2d 892, 894 (9th Cir. 1971), United States v. Hammond, 371 F.3d 776 (11th Cir. 2004), and United States v. Johnson, 152 F.3d 618, 628 (7th Cir. 1998). See April 26 Tr. at 12:17-14:16 (Taylor). Teston maintained that "there seems to be a split of authority" on the question whether a device designer's subjective intent is relevant, that "the Tenth Circuit has not expressly weighed in," and "the Tenth Circuit's authority that we do have strongly suggests that Mr. Teston's motives or his intent are relevant." April 26 Tr. at 14:17-23 (Taylor). Teston argued that, "even if the question really revolves around an objective standard, if we're wrong, there is nothing to suggest that Mr. Teston's subjective intent is inadmissible," and "[i]f this Court applies an objective standard, it can issue a limiting instruction . . . about Mr. Teston's subjective intent." April 26 Tr. at 15:18-24 (Taylor). In any event, Teston maintained that it would be practically impossible to separate his testimony on the objective qualities of the device from his subjective intent in designing it. See April 26 Tr. at 16:3-8 (Taylor). Teston further argued that the United States was attempting to foreclose Teston's ability to present a defense in the case. See April 26 Tr. at 16:9-17:6 (Taylor). Regarding

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the statute itself, on questioning from the Court, Teston contended that the "neither designed nor redesigned language" applies to all subparts of the statute, that intent is a relevant inquiry for all subparts, and that the inquiry "is much more complicated than what the Government is presenting in its motion in limine." April 26 Tr. at 18:7-19:17 (Taylor).

The United States began its arguments by highlighting the fact that it removed reference to 26 U.S.C. § 5845(f)(3) from the Second Superseding Indictment and stating that the question of intent accordingly is irrelevant. See April 26 Tr. at 20:4-12 (Armijo). In support of its arguments that the relevant inquiry was into the device's objective design, the United States discussed United States v. Posnjak, 457 F.2d 1110 (2d Cir. 1972), United States v. Lussier, 128 F.3d 618 (1998), United States v. Neal, 692 F.2d 1296 (10th Cir. 1982), United States v. Johnson, 152 F.3d 618 (7th Cir. 1998), and United States v. Homa, 608 F.2d 407 (10th Cir. 1979). See April 26 Tr. at 20:13-23:23 (Armijo). The discussion then turned to the text of 26 U.S.C. § 5845(f), with the United States emphasizing that the statutory exception does not include language regarding intent before returning to case law to support its point. See April 26 Tr. at 23:24-26:3 (Court, McNair). The Court questioned the United States on whether the purpose of its motion was to inform jury instructions or to exclude evidence. See April 26 Tr. at 26:17-22 (Court). The United States stated that it was not sure whether it would introduce statements by Teston as evidence, but that it wants to prevent Teston from making an argument on the basis of his subjective intent, which the United States characterized as a "jury nullification argument." April 26 Tr. at 26:23-27:10 (McNair). When questioned on whether there is a circuit split on the issue of subjective intent, the United States emphasized that Tenth Circuit case law and the case law of other Courts of Appeals both support the United States' position. See April 26 Tr. at 27:13-28:14 (McNair). The United States stated that courts reject the argument that, because a defendant assembled designed a homemade

device, his subjective intent must be relevant to the device's status as a destructive device.  See April 26 Tr. at 28:22-29:12 (McNair).  Arguments on the Motion in Limine concluded with Teston's discussion of United States v. Homa and United States v. Hedgcorth, 873 F.2d 1307 (9th Cir. 1989).  See April 26 Tr. at 30:12-32:5 (Taylor).

After the hearing, Teston filed his Response to United States' Motion in Limine to Preclude Evidence of Defendant's Subjective Intent, filed May 3, 2023 (Doc. 89)("Response").  In the Response, Teston contends that "26 U.S.C. § 5845(f) requires the government to prove beyond a reasonable doubt that the defendant knew or intended that the devices were designed or redesigned for use as a weapon for conviction under the provisions set forth in § 5861," and that, "even if this court finds as a matter of law that subjective intent is not required, Mr. Teston's subjective intent is still a relevant fact in issue and cannot be excluded without causing severe prejudice to him."  Response at 1.  Regarding the case law on 26 U.S.C. § 5845(f), Teston contends that "the circuits are not aligned" whether the relevant inquiry for determining whether a device was designed or redesigned for use as a weapon, and points the Court to a recent case from the Supreme Court of the United States of America, Ruan v. United States, 142 S.Ct. 2327 (2022), which he maintains abrogates the cases that the United States cites on the question of subjective intent.  See Response at 2.  Teston analogizes the statute and statutory exception at issue in Ruan v. United States to 26 U.S.C. § 5845(f), stating that, in that case,

> the Supreme Court addressed a similar exception to the one at issue here.  18 U.S.C. § 841 makes it unlawful "except as authorized" for a person to distribute a controlled substance.  The question in that case was whether this authorization exception pertains to the defendant's subjective state of mind or only to objective facts about the person's actual authorization.  Relying on its longstanding presumption in favor of requiring *mens rea* for criminal provisions carrying significant penalties, the Supreme Court held that when this exception is at issue, conviction requires proof of subjective intent.

Response at 2-3.  Teston contends that, in his case, "[s]ubjective design is crucial because, like in Ruan, this intent separates wrongful conduct from innocent conduct" and maintains that there are innocent uses for the device at issue, including his alleged management of a pest problem on his family's farm.  Response at 3.  Teston emphasizes that, "[i]f this Court reads the statute to require only objective intent, it risks deterring such conduct, and imposing significant punishment on a person who potentially lacked any actual criminal intent," which "threatens to render the crimes set forth in § 5861 strict liability offenses."  Response at 3-4.

In addition, Teston contends that his subjective intent in designing the device is admissible, even if the Court concludes that the United States presents the correct interpretation of 26 U.S.C. § 5845(f).  Teston points to United States v. Lussier, 129 F.3d 1312 at 1316) to support the position that subjective intent is admissible.  Further, Teston contends that his subjective intent is relevant "even under an objective standard, because it explains the features of the device, why they are there, and, . . . what they would have been capable of achieving."  Response at 4-5.  He maintains that excluding such evidence is more likely to confuse the jury than including it, and that the resulting confusion risks significant prejudice to Teston "by suggesting that his conduct was more dangerous than the facts allow."  Response at 5.  Teston also contends that his subjective intent relates to whether he "'knew of the specific characteristics or features' of the alleged 'firearm' and 'explosives' that bring them under the purview of 26 U.S.C. § 5861 and 18 U.S.C. § 841 for purposes of Counts 1, 2, and 3," a proposition for which Teston cites Staples v. United States, 511 U.S. 600 (1994), and United States v. Markey, 393 F.3d 1132, 1136 (10th Cir. 2004), in support. Response at 5.  Further, Teston notes that "[t]here is no way for the jury to assess Mr. Teston's knowledge of the characteristics of the device he allegedly made without probing his mental state in making it."  Response at 6.  Finally, Teston contends that evidence related to the device's

operability and the amount of powder it used is admissible, particularly if the relevant inquiry is

into the objective physical qualities of the device.  See Response at 6.  Teston concludes:

> The government is effectively asking that this Court limit all evidence about the
> design for the device at issue, apart from fact that it may have functioned by
> explosion.  But all of the evidence it seeks to keep out is relevant to the device's
> design which, under any construction of the definition of "explosive device," goes
> to the heart of culpability.  Excluding this evidence would amount to effectively
> prohibiting Mr. Teston from introducing exculpatory evidence, which would cause
> him immense prejudice.

Response at 6.

On May 4, 2023, the United States filed its Reply to Defendant's Response to the United

States' Motion in Limine to Preclude Evidence of Defendant's Subjective Intent in Making or

Possessing the Device, filed May 4, 2023 (Doc. 93)("Reply").  In the Reply, the United States first

addresses Teston's contention that Ruan v. United States abrogates the Courts of Appeals cases

that the United States cites in support of its contention that Teston's subjective intent is irrelevant

for purposes of 26 U.S.C. § 5845(f)(1).  See Reply at 1-3.  The United States emphasizes that: (i)

United States v. Ruan did not explicitly abrogate case law beyond the context of the statute at issue

in that case, 21 U.S.C. § 841; (ii) "the [Supreme] Court merely applied its previous precedent

regarding when a *mens rea* applies to an element and concluded that the § 841 *mens rea* applies to

the "except as authorized" exception"; and (iii) Teston suggests incorrectly that the "knowingly or

intentionally" mens rea in the statute at issue in United States v. Ruan should be applied to the

statutes at issue in this case, even though the proper mens rea is merely "knowingly."  Reply at 1-

3.  The United States proceeds to dispute Teston's characterization of case law from the Courts of

Appeals, including United States v. Hammond, 371 F.3d 776 (11th Cir. 2004), and United States

v. Lussier, 128 F.3d 1312 (9th Cir. 1997), maintaining that they support the United States'

interpretation of 26 U.S.C. § 5845(f)(1).  See Reply at 3-4.  The United States reiterates its

contention that Teston's subjective intent as the device's designer is irrelevant, and that the relevant inquiry is into the device's objective characteristics.  See Reply at 4-5.  Finally, the United States reiterates its arguments that (i) any suggestion that the amount of powder in the device made it harmless, or (ii) that the device was constructed poorly, are both irrelevant.  See Reply at 5-6.

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).   "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  Coffey v. United States, No. CIV 08-0588 JB/LFJ, 2012 WL 1698289, at *4 (D.N.M. May 8, 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING STATUTORY CONSTRUCTION

When interpreting statutes, the Court must start with the plain language.  See, e.g., Been v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10th Cir. 2007)("We review issues of statutory construction de novo, interpret[ing] the words of the statute in light of the purposes Congress

sought to serve.")(internal quotations and citations omitted).  "It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms."  Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)(internal quotations omitted).  See In re Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643 (1978)(noting that a court may not disregard the statute's plain language unless a literal application of the statutory language "would lead to absurd results ... or would thwart the obvious purpose of the statute")(internal quotations omitted).  "Courts 'indulge a strong presumption that Congress expresses its intent through the language it chooses.  Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it.'"  United Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165, 171 (4th Cir. 2005)(quoting Sigmon Coal Co. v. Apfel, 226 F.3d 291, 305 (4th Cir. 2000)).  See Public Lands Council v. Babbitt, 167 F.3d 1287, 1314 (10th Cir. 1999)(Seymour, C.J.)("In examining . . . [statutory] language, we assume that the words chosen by Congress are employed in their ordinary sense and accurately express Congress' [ ] legislative purpose.").

## LAW REGARDING AFFIRMATIVE DEFENSES

A criminal defendant is entitled to an instruction on a theory of defense if some evidence and the law supports the theory.  See United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006).  "A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis."  United States v. Black, 718 F. App'x 687, 689 (10th Cir. 2017)(unpublished)[2](quoting

---

[2]United States v. Black is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

United States v. Al-Rekabi, 454 F.3d at 1121), cert. denied, 138 S. Ct. 1583 (2018).  Although a

defendant is entitled to an instruction as to his or her theory of defense if there is some evidence

to support it, see United States v. Sparks, 791 F.3d 1188, 1193 (10th Cir. 2015), a court is not

required to give an instruction that misstates the law, see United States v. Portillo-Vega, 478 F.3d

1194, 1197-98 (10th Cir.2007); United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990).  "For

the purpose of determining whether the evidence was sufficient to warrant a jury instruction, [the

Tenth Circuit] accept[s] the testimony most favorable to the defendant."  United States v. Sparks,

791 F.3d 1188, 1193 (citing United States v. Al-Rekabi, 454 F.3d at 1121).  If a defendant's theory

of defense has a reasonable basis in law and fact,

> the trial court should refer to that theory and to the testimony bearing on it and
> submit the issue with an instruction on the applicable law.  The jury should be
> advised of the defendant's position so as to put the issues raised by the theory of
> defense squarely before it.

United States v. Haney, 318 F.3d 1161, 1163 (10th Cir. 2003)(quoting United States v. Lofton,

776 F.2d 918, 920 (10th Cir. 1985)).  If an affirmative defense consists of multiple elements,

however, "it is essential that the testimony given or proffered meet a minimum standard as to each

element."  United States v. Bailey, 444 U.S. 394, 415 (1980).  See United States v. Graham, 663

F. App'x 622, 625 (10th Cir. 2016)(unpublished)("[T]here is no question that where the

---

> In this circuit, unpublished orders are not binding precedent, . . . and we
> have generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United
States v. Black and United States v. Graham, 663 F. App'x 622 (10th Cir. 2016), have persuasive
value with respect to a material issue, and will assist the Court in its disposition of this
Memorandum Opinion and Order.

defendant's evidence is insufficient on even *one* element of the defense, the defendant is not permitted to proceed further."(emphasis in original)).  A Court of Appeals reviews a district court's decision whether to allow a defendant to present an affirmative defense for an abuse of discretion. See United States v. Black, 718 F. App'x at 689; United States v. Al-Rekabi, 454 F.3d at 1123; United States v. Fox, 557 F. Supp. 2d 1251, 1259 (D.N.M. 2007)(Browning, J), aff'd, 573 F.3d 1050 (10th Cir. 2009).

## ANALYSIS

The Court grants in part and denies in part the Motion in Limine.  First, on the Motion in Limine's primary request, the Court concludes that, under relevant case law, evidence that a device was "neither designed nor redesigned for use as a weapon" is properly presented as an affirmative defense under 26 U.S.C. § 5845(f)(1), and should relate to the device's objective physical characteristics, and not its designer's subjective intent.  Because the evidence of Teston's subjective intent is irrelevant, the Court excludes it under rule 401 and rule 402 of the Federal Rules of Evidence.  Similarly, the Court concludes that evidence that Teston's device was poorly constructed is irrelevant under Tenth Circuit case law and, therefore, excludes it, as well.  The Court declines to exclude evidence that that the amount of powder in Teston's device rendered the device harmless, because it is relevant and not barred by applicable case law.

I.   **THAT A DEVICE WAS NOT DESIGNED AS A WEAPON IS AN AFFIRMATIVE DEFENSE, AND THE RELEVANT EVIDENCE UNDER 26 U.S.C. § 5845(f)(1) IS THE DEVICE'S OBJECTIVE PHYSICAL CHARACTERISTICS, AND NOT THE DESIGNER'S SUBJECTIVE INTENT.**

26 U.S.C. § 5845(f) defines "destructive device," for purposes of applying the provisions of Chapter 26 of the United States Code, as follows:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more

than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or similar propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.  The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of Section 7684(2), 7685, or 7686 of title 10, United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

26 U.S.C. § 5845(f).[3]  In addition to the three destructive devices that the statute describes in 26

U.S.C. §§ 5845(f)(1), (f)(2), and (f)(3), the statute also includes a series of statutory exceptions to

---

[3]The companion definitions section for the application of Chapter 18 of the United States Code contains a substantively similar definition of "destructive device":

(A)      any explosive, incendiary, or poison gas--

    (I)      bomb,

    (II)     grenade,

    (III)    rocket having a propellant charge of more than four ounces,

    (IV)     missile having an explosive or incendiary charge of more than one-quarter once,

    (V)      mine, or

    (VI)     device similar to any of the devices described in the preceding clauses;

(B)      any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile

the definition of destructive device, including one for "any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

As the first step in its analysis, the Court looks to binding Tenth Circuit case law on the application of 26 U.S.C. § 5845(f)(1).  The clearest guide to the Tenth Circuit's interpretation of that statute is United States v. La Cock, 366 F.3d 883 (10th Cir. 2004).  In that case, the United States indicted a defendant on three counts that hinged on the classification of the following contraption as a "destructive device" under 26 U.S.C. § 5845(f)(1):

> A small metal box that . . . .  contained a metal divider that separated its interior into two compartments, one slightly larger than the other.  In the larger compartment were three rounded river rocks that weighed about 18 pounds.  In the smaller compartment were approximately 80 grams of Pyrodex powder scattered around the bottom.  Mixed in with the Pyrodex powder were 26 Black Cat firecrackers and some wooden matches.  An initiator for the device was attached to the divider on the side of the compartment containing the Pyrodex and the firecrackers.  The initiator consisted of a small cylinder of duct tape that was lined with strike pads torn from matchbooks.  At the bottom of the cylinder were three wooden matches with a cluster of match heads ("the match device") glued to them.

---

by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C)     any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive may be readily assembled.

> The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 7684(2), 7685, or 7686 of title 10, or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.

18 U.S.C. § 921(a)(4).

> The three matches were bound together with a wire that was also attached to the lid
> of the box.  The initiator was designed such that when the lid of the box was opened,
> the wire would pull the match device through the cylinder and along the strike pads,
> causing the match device to ignite.  The resulting flame would ignite the Pyrodex
> powder, which in turn would ignite the firecrackers.

United States v. La Cock, 366 F.3d at 884-85 (footnote omitted).  The United States proceeded on

a theory that the device was "an explosive or incendiary bomb or similar device" under 26 U.S.C.

§ 5845(f)(1).  United States v. La Cock, No. CR 00-552 JP, 2002 WL 35649758, at *3 (D.N.M.

Aug. 12, 2002)(Parker, C.J.)(unpublished), rev'd and remanded, 366 F.3d 883 (10th Cir. 2004).

The defendant made two primary arguments: (i) that the device was designed as a home-intruder

alarm rather than as a weapon; and (ii) that, because the device did not have explosive capability,

it was not a destructive device.  See United States v. La Cock, No. CR 00-0552 JP, 2002 WL

35649758, at *2.

In assessing the first argument that the device was not a weapon, the Honorable James A.

Parker, Chief Judge for the United States District Court for the District of New Mexico, looked to

the objective physical qualities of the device in question, stating the following:

> A court determining whether a device is designed as a weapon looks to the
> "physical structure or method of operation and not to intent or schemes of the
> possessor."  *United States v. Posnjak*, 457 F.2d 1110, 1116 (2d Cir. 1972); [*United
> States v.* ]*Johnson*, 152 F.3d[ 618,] 626 [(10th Cir. 1998)] (applying an objective
> standard).  If the design is consistent with a legitimate social purpose, the statutory
> exception applies and there is no criminal liability.  *Johnson*, 152 F.3d at 626 ("The
> ultimate issue in this inquiry is whether the device can be regarded as having 'no
> legitimate social purpose.'")(citing *United States v. Markley*, 567 F.2d 523, 527
> (1st Cir. 1977); *Posnjak*, 457 F.2d at 1116 (observing that "a device which
> otherwise appeared to fall within the statute would be exempted from its
> requirements if it could be shown that it was not designed as a weapon").

United States v. La Cock, No. CR 00-0552 JP, 2002 WL 35649758, at *2.  Responding to the

parties' disagreement whether the device was designed as an alarm or a weapon, Chief Judge

Parker analyzed the device's physical properties, and concluded that the device was "constructed

to emit noise, light, and smoke," and that, "[v]iewed objectively, this admittedly 'unique device' was not designed to be a weapon, but rather a signaling device in the form of an alarm . . . ." No. CR 00-0552 JP, 2002 WL 35649758, at *3. The analysis looked to the device's objective qualities, and not its creator's subjective intent, in determining whether the device was designed as a weapon for 26 U.S.C. § 5845(f)(1)'s purposes. See No. CR 00-552 JP, 2002 WL 35649758, at *3. Chief Judge Parker also embraced the defendant's second argument that, because the device, though incendiary in nature, did not have the ability to explode, it could not be a destructive device under 26 U.S.C. § 5845(f)(1). See United States v. La Cock, No. CR 00-552 JP, 2002 WL 35649758, at *4. Having concluded that (i) the device was not designed to be a weapon and (ii) the device, because it would not explode, did not constitute a destructive device, the district court dismissed the indictment, because its counts hinged on the device being a destructive device under 26 U.S.C. § 5845(f)(1). See United States v. La Cock, No. CR 00-552 JP, 2002 WL 35649758, at *4.

After the United States appealed, the Tenth Circuit reversed Chief Judge Parker's dismissal of the indictment, on two grounds. See 336 F.3d at 889. First, the Tenth Circuit rejected as erroneous the conclusion that the device could not be considered a destructive device under 26 U.S.C. § 5845(f)(1) because it lacked explosive capability. See United States v. La Cock, 366 F.3d at 888-89. The Tenth Circuit then turned to the question whether Chief Judge Parker erred in dismissing the indictment based on the conclusion that the device was not designed as a weapon. See 366 F.3d at 889. Looking to its own law as well as that of other circuits, the Tenth Circuit emphasized that "the determination as to whether a device was 'designed [or] redesigned for use as a weapon' is an *affirmative defense*, not an element of the crime that must be alleged in the indictment." United States v. La Cock, 366 F.3d 883, 889 (10th Cir. 2004)(quoting United States v. Neal, 692 F.2d 1296, 1303 (10th Cir. 1982)(alteration and emphasis in United States v. La Cock,

but not in United States v. Neal), and citing United States v. Johnson, 152 F. 3d 618, 623 (7th Cir. 1998), United States v. Posnjak, 457 F.2d 1110, 1116 (2d Cir. 1972), and United States v. Oba, 448 F.2d 892, 894 (9th Cir. 1971)).   The Tenth Circuit emphasized that, "[a]s a contested affirmative defense, Defendant's argument that the device was not designed as a weapon should be resolved at trial, not during a motion to dismiss the indictment."  United States v. La Cock, 366 F.3d at 889.  United States v. La Cock makes clear that the question of whether a device is designed as a weapon for purposes of 26 U.S.C. § 5845(f)(1) is a question for the jury.  See 366 F.3d at 889. The Tenth Circuit did not address directly whether Chief Judge Parker was right to conduct an objective analysis of the device's physical characteristics rather than of the defendant's subjective intent in creating the device, only noting that "the district court may indeed have been correct" to conclude that the device was not designed to be a weapon.  366 F.3d at 889.

The Court deems it significant that the Tenth Circuit, which scrutinized in some detail Chief Judge Parker's conclusion that the device was not an incendiary bomb because it did not explode, did not express any disapproval of Chief Judge Parker's exclusive reliance on analyzing the device's objective physical qualities, rather than on its creator's subjective intent.  See 366 F.3d at 889.  Had the Tenth Circuit disagreed with Chief Judge Parker's approach, it had opportunity to express its disapproval and to provide corresponding instructions for use on remand, but it did not go that direction.  See 366 F.3d at 889.  The Court takes the Tenth Circuit's failure to criticize the objective-physical-qualities approach or to require Chief Judge Parker to instruct the jury to consider the defendant's subjective intent, as some indication that it mostly endorsed Chief Judge Parker's approach.

Because Tenth Circuit case law on this topic is limited, the Court must look to another case, United States v. Homa, 608 F.2d 407 (10th Cir. 1979), that is distinct from United States v. La

Cock, because it does not involve devices that the defendant himself created, but that is also indicative of the Tenth Circuit's approach to 26 U.S.C. § 5845(f)(1).  In that case, which proceeded to a jury-waived bench trial, the United States indicted a defendant for possession of three different grenades produced for the military, each of which it alleged were "destructive devices" under 26 U.S.C. § 5845(f)(1).  See United States v. Homa, 441 F.Supp. 330, 331 (D. Colo. 1977)(Matsch, J.), aff'd, 608 F.2d 407 (10th Cir. 1979).  The Honorable Richard P. Matsch, United States District Judge for the United States District Court for the District of Colorado, concluded that "the objective, physical structure of the device, or the method of its normal operation, . . . is significant to a classification of it as a 'destructive device'" under 26 U.S.C. § 5845(f)(1).  United States v. Homa, 441 F.Supp. at 332 (citing United States v. Dalpiaz, 527 F.2d at 551, and United States v. Posnjak, 457 F.2d at 1116).  Looking to the physical qualities of the devices at issue, Judge Matsch granted the defendant's motion for judgment of acquittal on two counts, corresponding to possession of two types of grenades, because

> the government's evidence showed that the thermite grenades were nothing more than instruments for the controlled burning of material.  They are in the configuration of nonbursting grenades only for convenience in their use by the military in field operations.  Both the objective physical structure and the method of operation of the grenade are not different from a welding torch.

United States v. Homa, 441 F.Supp. at 332.  Judge Matsch convicted the defendant for his possession of another type of grenade, concluding:

> The white phosphorous grenades are quite different.  While they produce smoke and while they have incendiary and illuminating effects, the evidence shows unmistakably that these grenades were specifically designed for use in military combat and the design criteria for the [white phosphorous grenades] specifically considered the casualty-producing effect as a requirement for them.  The evidence shows that there are other devices used by the military to produce smoke for signalling and screening without the casualty-producing effects of the white phosphorous grenades[, which], like a Molotov cocktail, produce[] indiscriminate and uncontrolled destruction when its power is released.

- 21 -

United States v. Homa, 441 F.Supp. at 332.

The defendant in United States v. Homa appealed his conviction for possession of the white phosphorous grenades to the Tenth Circuit on the basis that Judge Matsch's conclusion that the grenades were designed for use as a weapon was clearly erroneous.  See 608 F.2d at 409.  The defendant argued that the white phosphorous grenades were "designed to be used for smoke signaling and screening purposes," and not for use as a weapon.  608 F.2d at 409.  Acknowledging that the defendant submitted "some evidence" in support of his argument, the Tenth Circuit nevertheless affirmed the district court's conclusion, noting that the United States called two witnesses whose testimony focused on the grenades' objective, physical qualities, which led Judge Matsch to find that the grenades were "capable of producing human injuries, not by fragmentation, but by the dispersion of 5000 [degree] Fahrenheit white phosphorous particles which burn into human flesh, inflicting extremely painful burns."  608 F.2d at 409.  As in United States v. La Cock, the focus both of the district court and of the Tenth Circuit in United States v. Homa was on the device's objective, physical qualities, rather than on the designer's subjective intent.  On the basis of this limited case law, the Court concludes that, in the Tenth Circuit, the appropriate inquiry into whether a device is not designed as a weapon for purposes of 26 U.S.C. § 5845(f)(1) must focus on the device's objective, physical characteristics, and not on the designer's subjective intent.

The Court expresses its view that the apparent Tenth Circuit position provides the correct interpretation of 26 U.S.C. § 5845(f)(1), one which is in line with thorough and well-reasoned opinions from multiple other Courts of Appeals.  See, e.g., United States v. Hammond, 371 F.3d 776, 780 (11th Cir. 2004)(noting that 26 U.S.C. § 5845(f)(1) does not specify what kind of evidence proves that an explosive device was designed as a weapon, and prescribing an analysis

of a device's "design features," stating that "the critical inquiry is whether the device, as designed, has any value other than as a weapon," and concluding that "the presence of design features that eliminate any claimed entertainment or benign value supports a finding that the device was designed as a weapon"); United States v. Johnson, 152 F.3d 618, 623 (7th Cir. 1998)(stating that, for assembled devices under 26 U.S.C. § 5845(f)(1), "the only issue is whether the objective characteristics of the device bring it within the ambit of the statute; subjective intent regarding the device is not an appropriate consideration in that inquiry");  United States v. Markley, 567 F.2d 523, 527 (1st Cir. 1977)(stating that, when homemade assembled devices have "no legitimate social purpose," they "fall within the provisions of Section 5845(f) regardless of their intended purpose"); United States v. Dalpiaz, 527 F.2d 548, 551 (6th Cir. 1975)(stating that "what [the defendant] intended to do" with an assembled device was "irrelevant" for purposes of applying the statutory exception to 26 U.S.C. § 5845(f)(1)); United States v. Morningstar, 456 F.2d 278, 280 (4th Cir. 1972)(stating that 26 U.S.C. § 5845(f)(1) covers "explosive and incendiary devices which have no business or industrial utility . . . .  regardless of their intended use"); United States v. Posnjak, 457 F.2d 1110, 1116 (2d Cir. 1972)(examining legislative history to conclude that "Congress was concerned in the National Firearms Act mainly with clearly identifiable weapons which were the cause of increasing violent crime and which had no lawful uses," and that "the intent of the user of these weapons was irrelevant, as they were so prone to abuse that they were considered per se dangerous and unnecessary for legitimate pursuits").  The Court's review of relevant case law, which the United States Court of Appeals for the First Circuit has characterized as a "confusing welter of cases," United States v. Curtis, 520 F.2d 1300, 1302 (1st Cir. 1975), suggests that the United States is correct to state in its briefing that the "vast majority of circuit courts that have considered the relevancy of a defendant's subjective intent when he or she

possessed an *assembled* device have held that the defendant's subjective intent is irrelevant." Motion in Limine at 1 (emphasis in Motion in Limine).

The Court notes, however, that the Ninth Circuit appears to hold a less restrictive view on the relevance of subjective intent, as it expressed in United States v. Lussier, 128 F.3d 1312 (9th Cir. 1997).  That case deals with the definition of destructive devices under 18 U.S.C. § 921(a)(4), the definitions provision that Chapter 18 of the United States Code uses, which is substantively identical to 26 U.S.C. § 5845(f).  Compare 18 U.S.C. § 921(a)(4), with 26 U.S.C. § 5845(f).  Like many other courts, the Ninth Circuit differentiates assembled devices under 18 U.S.C. § 921(a)(4)(A), the companion provision to 26 U.S.C. § 5845(f)(1), from combinations of parts under 18 U.S.C. § 921(a)(4)(C), the companion provision to 26 U.S.C. § 5845(f)(3), and analyzed each subsection's requirements.  See United States v. Lussier, 128 F.3d at 1314-17.  The Ninth Circuit states: "if the devices fall under [18 U.S.C. § 921(a)(4)] as 'device[s] similar to' a bomb, grenade, etc., the Government was *not* required to show [the defendant's] intent in possessing the $CO_2$ devices because intent is not an element of the crime."  United States v. Lussier, 128 F.3d at 1314.  Later in its opinion, however, the Ninth Circuit states that, "[d]espite the fact that proof of intent is not an element under [18 U.S.C. § 921(a)(4)(A)], we have sometimes looked to a possessor's intent as evidence of whether a device was 'designed [or] redesigned for use as a weapon.'"  United States v. Lussier, 128 F.3d at 1316.

The Ninth Circuit then discussed three cases in which it considered the defendant's intent. See United States v. Lussier, 128 F.3d at 1316.  In the first, United States v. Hedgcorth, 873 F.2d 1307  (9th Cir. 1989), the Ninth Circuit affirmed a conviction involving the use of a destructive device, and, in determining whether 18 U.S.C. § 921(a)(4) applied, the court looked to "[1] the nature of the device and [2] the intent with which it was constructed and used."  United States v.

Lussier, 128 F.3d at 1316 (quoting United States v. Hedgcorth, 873 F.2d at 1311).  On the basis of the napalm-firebomb device's objective physical characteristics, the Ninth Circuit concludes that it was a destructive device.  See United States v. Hedgcorth, 873 F.2d at 1312.  The Ninth Circuit also concludes, however, that "[t]he defendants' intent *also supports* the jury's conclusion that the firebombs were designed for use as weapons," as "[t]here was overwhelming evidence that the mercenaries built the firebombs for the sole purpose of destroying property and intimidating people" and "[d]efendants offered no evidence that the firebombs were designed for any legitimate purpose."  United States v. Hedgcorth, 873 F.2d at 1312 (emphasis added).  The Ninth Circuit appears to have treated the defendant's purpose for the use of the device, i.e., their subjective intent, as supplemental proof that it was designed as a weapon, a conclusion that the Ninth Circuit reached by analyzing the objective physical characteristics of the device.  See United States v. Hedgcorth, 873 F.2d at 1312.

In the second case, United States v. Reed, 726 F.2d 570 (9th Cir. 1984), the Ninth Circuit reversed convictions on the grounds that "a reasonable jury could not have found beyond a reasonable doubt that [the devices] were in fact designed or used as weapons."  726 F.2d at 576. As the Ninth Circuit notes in United States v. Lussier, however, in analyzing whether the devices were designed as weapons, the Ninth Circuit in United States v. Reed "did not even reach the defendants' actual incendiary intent" and, instead, "relied on the nature of the devices."  United States v. Lussier, 128 F.3d at 1316.  Indeed, United States v. Reed does not mention specifically subjective intent, stating only that the Ninth Circuit's "cases thus have looked to the apparent purpose for which the device was created, and to the manner of its actual use," and that "our inquiry is directed to a pragmatic analysis of the kind of device involved."  726 F.2d at 576.  In its analysis, the Ninth Circuit states:

These cans were not in fact used as weapons.  They could not well have been so used, for it would have been difficult and dangerous for a person to hold such a can, ignite the paper and then successfully use or throw the can without serious harm to himself.  Nothing in the record indicates that a device of this kind, although capable of causing great incendiary damage, bears the traditional indicia of a weapon, or had such a possible use

The only reason that the Court can ascertain for the Ninth Circuit's including United States v. Reed in its list of cases that consider subjective intent is its reference to looking "to the apparent purpose of which the device was created, and to the manner of its actual use," two factors that can just as easily find proof in the objective physical qualities of the devices rather than the subjective intent of their designer.  726 F.2d at 576.

Finally, the Ninth Circuit pointed to United States v. Peterson, 475 F.2d 806 (9th Cir. 1973).  In that case, the Ninth Circuit affirmed a destructive-device conviction for possession of what it described as "a common street do-it-yourself variety of a readily hand-thrown incendiary bomb or grenade and a weapon or instrumentality of crime and violence capable of destroying property by fire."  United States v. Peterson, 475 F.2d at 811.  Although United States v. Peterson did not state explicitly what subsection of 26 U.S.C. § 5845(f) was at issue -- a recurring problem in the appellate case law interpreting that statute -- its oblique reference to the components provision, 26 U.S.C. § 5845(f)(3), and not the assembled-device provision, 26 U.S.C. § 5845(f)(1), suggests that the court was not applying the subsection at issue in this case, and, indeed, that it did not belong in an analysis of 26 U.S.C. § 5845(f)(1).  See 475 F.2d at 811 ("Congress manifestly intended to proscribe friendly things when with evil intent they are combined or joined together to produce a hostile object or device through the language used in subsection (a), (f)(3).").  Summarizing United States v. Peterson, the Ninth Circuit in United States v. Lussier stated that it "did not look to the defendants' intent, but rather to the nature of the completed device," to

conclude that it was "'similar to' military ordinance." 128 F.3d at 1316 (quoting United States v. Peterson, 475 F.2d at 811).

The Ninth Circuit concludes its summary of cases in United States v. Lussier by stating that its "conclusion in *Peterson* that a homemade incendiary device was an 'incendiary bomb or grenade,' even without a showing of the possessor's intent, comports with the decision of other circuits." 128 F.3d at 1316 (citing United States v. Markley, 567 F.2d at 523, United States v. Lisk, 559 F.2d 1108, 1109 n.1, 1111 & n.4 (7th Cir. 1977), United States v. Cruz, 492 F.2d 217, 219 (2d Cir. 1974), and United States v. Ross, 458 F.2d 1144, 1145-46 (5th Cir. 1972)). Returning to its analysis of the facts in United States v. Lussier, the Ninth Circuit concludes that, because the devices at issue were (i) "fully assembled 'device[s] similar to' bombs, grenades, etc."; (ii) not "socially useful devices that could only be converted into destructive devices by [the defendant's] intent to use them as weapons"; and (iii) "'common street do-it-yourself . . . bomb[s],'" they implicated 18 U.S.C. § 921(a)(4)(A) -- the companion to 26 U.S.C. § 5845(f)(1) -- "where proof of intent is not required." United States v. Lussier, 128 F.3d at 1317 (quoting United States v. Peterson, 475 F.2d at 811, and citing United States v. Ruiz, 73 F.3d 949, 951 (9th Cir. 1996)). Accordingly, the Ninth Circuit concluded that, "[b]ecause their nature and characteristics convincingly demonstrated that they were designed as weapons, no auxiliary evidence concerning [the defendant's] intent to use them as weapons was required." United States v. Lussier, 128 F.3d at 1317. The Court's interpretation of Ninth Circuit jurisprudence on this issue, which it takes as permissive regarding subjective intent, is that courts may consider a device designer's subjective intent as "auxiliary evidence" if analyzing the objective, physical qualities of a device proves inconclusive. 128 F.3d at 1317. Accordingly, even in the Ninth Circuit, the primary inquiry

appears to be into a device's objective, physical characteristics.  See United States v. Lussier, 128 F.3d at 1316-17.

Even if Tenth Circuit case law does not suggest that the appropriate 26 U.S.C. § 5845(f)(1) analysis examines device's objective, physical characteristics and not the designer's subjective intent, the Court would still not follow the Ninth Circuit approach that permits auxiliary evidence of a device designer's subjective intent.  See United States v. Lussier, 128 F.3d at 1317.  The Court finds more persuasive the Seventh Circuit's exercise in statutory interpretation in United States v. Johnson, a case that also addresses much of the 26 U.S.C. § 5845(f)(1) case law from the Courts of Appeals, by virtue, in part, of its being decided two decades after many of the other key cases in the 1970s.  See 152 F.3d at 622-28.  Looking first to the statute's text and the interaction of its subsections in light of the statutory scheme's purpose, the Seventh Circuit examines the different functions of 26 U.S.C. § 5845(f)(1), which applies "[w]hen the device is inherently susceptible only to a use that makes it a destructive device," and 26 U.S.C. § 5845(f)(3), which "[w]hen the defendant possesses parts susceptible to both a destructive and constructive use," which necessitates "further inquiry . . . to ensure that the individual who uses such material achieve a good social or commercial purpose is not subject to criminal liability."  152 F.3d at 624.  Applying 26 U.S.C. § 5845(f) to the case's facts, the Seventh Circuit summarizes its conclusions -- which the Court accepts as the correct view of the statute at issue - as follows:

> In sum, we conclude that the "destructive device" definition contained in 26 U.S.C. § 5845(f) was intended to operate in a precise but flexible manner. Generally, persons in possession of fully assembled devices that are clearly bombs or similar devices will be charged only under [26 U.S.C. § 5845(f)(1)]. In those cases, the only issue is whether the objective characteristics of the device bring it within the ambit of the statute; subjective intent regarding the device is not an appropriate consideration in that inquiry. In contrast, a person found to possess unassembled component parts or an assembled combination of parts that is less clearly within the ambit of subpart (1) generally will be charged under [26 U.S.C.

§ 5845(f)(3)].  In those cases, we have explained that the statute indicates that the objective characteristics of the device or component parts first should be considered.  If the objective design of the device or component parts indicates that the object may only be used as a weapon, i.e., for no legitimate social or commercial purpose, then the inquiry is at an end and subjective intent is not relevant.  However, if the objective design inquiry is not dispositive because the assembled device or unassembled parts may form an object with both a legitimate and an illegitimate use, then subjective intent is an appropriate consideration in determining whether the device or parts at issue constitute a destructive device under [26 U.S.C. § 5845(f)(3)].

United States v. Johnson, 152 F.3d at 627-28 (footnote omitted).  The Court determines that this summary from United States v. Johnson characterizes properly 26 U.S.C. § 5845(f)'s operation.

The recent Supreme Court case of Ruan v. United States, 142 S.Ct. 2370 (2022)(Breyer, J.), does not disturb the Court's conclusion that Teston's subjective intent is irrelevant for purposes of 26 U.S.C. § 5845(f)(1).  In that case, the Supreme Court held that the "knowingly or intentionally" mens rea in 21 U.S.C. § 841, a statute prohibiting the manufacture, distribution, or dispensing of controlled substances, "[e]xcept as authorized" in the statute, 21 U.S.C. § 841(a), applied to that statute's "[e]xcept as authorized" clause, Ruan v. United States, 142 S.Ct. at 2376.  The Supreme Court summarized the holding's implications as follows: "[O]nce a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."  Ruan v. United States, 142 S.Ct. at 2376 (quoting 21 U.S.C. § 841(a)).  Teston attempts to analogize the statute at issue in Ruan v. United States to 26 U.S.C. § 5845(f)(1) by suggesting that it "contains a similar exception to the one at issue" and that the Court must therefore consider Teston's subjective intent in designing the device.  Response at 2.  Specifically, Teston contends that possession of the devices that U.S.C. § 5845(f) covers "is unlawful only if they are designed

or redesigned for use as a weapon," and that "[s]ubjective design is crucial because, like in *Ruan*, this intent separates wrongful conduct from innocent conduct."  Response at 3.

There is, however, an important distinction between the statute at issue in <u>United States v. Ruan</u> and the one at issue in this case: 21 U.S.C. § 841, the controlled-substances statute, contains a "knowingly or intentionally" mens rea, and 26 U.S.C. § 5845(f)(1), the assembled-destructive-device-definition statute, does not.  <u>Compare</u> 21 U.S.C. § 841, <u>with</u> 26 U.S.C. § 5845(f)(1).  In this case, the applicable "knowing" mens rea is derived from another statute and does not appear in the text of 26 U.S.C. § 5845(f)(1), which is a definitions provision.  <u>See</u> 26 U.S.C. § 5845(f)(1). Because 26 U.S.C. § 5845(f)(1) contains no scienter requirement which the Court could consider applying to the "neither designed nor redesigned as a weapon" clause in the manner that the Supreme Court did in <u>United States v. Ruan</u>, the holding in that case leaves the Court's interpretation of 26 U.S.C. § 5845(f)(1) undisturbed.  <u>See</u> 26 U.S.C. § 5845(f)(1).  In <u>United States v. Ruan</u>, the Supreme Court reasons, regarding the application of the "knowingly and intentionally" mens rea to the "[e]xcept as authorized" clause:

> In [21 U.S.C.] § 841 prosecutions, then, it is the fact that the doctor issued an *unauthorized* prescription that renders his or her conduct wrongful, not the fact of the dispensation itself.  In other words, authorization plays a "crucial" role in separating innocent conduct -- and, in the case of doctors, socially beneficial conduct -- from wrongful conduct.  *X-Citement Video*, 513 U.S. at 73, 115 S.Ct. 464.  Applying § 841's "knowingly or intentionally" *mens rea* to the authorization clause thus "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts."

<u>Ruan v. United States</u>, 142 S.Ct. at 2377.  In contrast, under 26 U.S.C. § 5845(f)(1), the designer's subjective intent does not "separate wrongful from innocent acts," because, as the Seventh Circuit states in <u>United States v. Johnson</u>, 26 U.S.C. § 5845(f)(1) applies "[w]hen the device is inherently susceptible only to a use that makes it a destructive device."  <u>United States v. Johnson</u>, 152 F.3d

at 624.  The subjective intent inquiry is relevant only under 26 U.S.C. § 5845(f)(3), which applies "[w]hen the defendant possesses parts susceptible to both a destructive and constructive use," thereby necessitating "further inquiry . . . to ensure that the individual who uses such material achieve a good social or commercial purpose is not subject to criminal liability."  United States v. Johnson, 152 F.3d at 624.  Accordingly, while the Court acknowledges the Supreme Court's observation, which Teston cites, that "[a] strong scienter requirement helps to diminish the risk of 'overdeterrence,' i.e., punishing acceptable and beneficial conduct that lies close to, but on the permissible side of the criminal line," it submits that the application of 26 U.S.C. § 5845(f)(1) presents no such concern.  Ruan v. United States, 142 S.Ct. at 2378.  The Court concludes that evidence of Teston's subjective intent in designing the device is irrelevant for purposes of 26 U.S.C. § 5845(f)(1).

By filing its Second Superseding Indictment with an amended Count 3, Making of an Unregistered Firearm, the United States chose to proceed on an assembled-device theory under 26 U.S.C. § 5845(f)(1).  "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  Given that evidence of Teston's subjective intent in designing the device is irrelevant for purposes of a claim under 26 U.S.C. § 5845(f)(1), it is inadmissible under rule 402 of the Federal Rules of Evidence.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  If Teston is to present an affirmative defense under 26 U.S.C. § 5845(f)(1), it should focus on his device's objective physical qualities, and not on his subjective intent in designing it.  See United States v. La Cock, 366 F.3d at 889; United States v. Johnson, 152 F.3d at 627.

II.   **TENTH CIRCUIT CASE LAW DIRECTS THE COURT TO EXCLUDE EVIDENCE THAT THE DEVICE WAS CONSTRUCTED POORLY, BUT NO SUCH BAR EXISTS FOR EVIDENCE THAT THE AMOUNT OF POWDER IN THE DEVICE RENDERED IT HARMLESS.**

The Court now turns to United States' request that the Court exclude: (i) "any argument, question or suggestion that the device was poorly constructed"; and (ii) "suggestions by Defense counsel that the amount of powder in the device rendered it harmless."  Motion in Limine at 4-5. The United States devotes only two sentences in the Motion in Limine to these requests, providing cites to case law, see United States v. La Cock, 366 F.3d at 883, 889 n.9; United States v. Copus, 93 F.3d 269, 273-74 (7th Cir. 1997); United States v. Ragusa, 664 F.2d 696, 700 (8th Cir. 1981), but no argument beyond the allegation that the evidence they seek to exclude is irrelevant, see Motion in Limine at 4-5.  Teston contends that, "if the inquiry revolves around objective design features, as the government avers, the amount of smokeless powder used, and the operability of the item are unquestionably relevant":

> The government is effectively asking that this Court limit all evidence about the design of the device at issue, apart from fact that it may have functioned by explosion.  But all of the evidence it seeks to keep out is relevant to the device's design which, under any construction of the definition of "explosive device," goes to the heart of culpability.  Excluding this evidence would amount to effectively prohibiting Mr. Teston from introducing exculpatory evidence, which would cause him immense prejudice.

Response at 6.  Given that the relevant inquiry under 26 U.S.C. § 5845(f)(1) is into the device's objective physical characteristics rather than Teston's subjective intent, if the Court were writing on a clean slate, the Court would allow evidence of the device's physical characteristics as relevant under rule 401 and rule 402 of the Federal Rules of Evidence.  See Fed. R. Evid. 401; Fed R. Evid. 402.  Tenth Circuit case law is, however, binding on the Court, and in United States v. La Cock, the Tenth Circuit concluded that Chief Judge Parker's determination that "whether [a] device

would have functioned as designed is irrelevant to the determination as to whether it falls within the terms of [26 U.S.C.] § 5845(f)." United States v. La Cock, 336 F.3d at 888 n.9 (citing United States v. Johnson, 152 F.3d at 628 ("Shoddy workmanship cannot make a device that contains all the ingredients necessary to inflict harm, and to do nothing more, into something more benign.")). Accordingly, the Court will exclude evidence that the device was poorly constructed as irrelevant. See United States v. La Cock, 336 F.3d at 888 n.9.

Regarding evidence that the "amount of powder in the device rendered it harmless," Motion in Limine at 4, although it is non-binding, the Court finds the Seventh Circuit's reasoning in United States v. Copus persuasive, but not for the principle for which the United States invokes it. See 93 F.3d at 273. Specifically, the Court finds persuasive the Seventh Circuit's statutory interpretation of 26 U.S.C. § 5845(f)(1), in which it compares the statute's definition of "bomb," which contains no reference to a specific amount of powder required, see 26 U.S.C. § 5845(f)(1)(A), to its definition of "rocket," 26 U.S.C. § 5845(f)(1)(C), and "missile," 26 U.S.C. § 5845(f)(1)(D), the former requiring four ounces of propellant charge and the latter requiring one-quarter ounce of explosive or incendiary charge, see United States v. Copus, 93 F.3d at 273. The Court agrees with the Seventh Circuit's conclusion that "[t]he fact that Congress chose to require a minimum explosive charge for a missile but not for a bomb counsel against reading any such requirement into the statutory language." United States v. Copus, 93 F.3d at 273-74. On that basis, the Seventh Circuit concludes:

> The only possible limit we discern from the statutory language is that the device must have been designed or redesigned "as a weapon." In the present case, although the explosive capacity of [the defendant's] detonators may have been smaller than the explosive capacity of a grenade, mine, or military-type bomb, [the defendant's] detonators could qualify as "weapons." The prosecution introduced evidence that an explosion of one of [the defendant's] devices could cause property damage and bodily injury.

> Accordingly, we reject [the defendant's] position that the detonators fall under the statutory exception to the definition of "destructive devices" either because they were not "military-type" weapons or because of their smaller explosive capacity.

United States v. Copus, 93 F.3d at 274.  The Seventh Circuit's conclusion is sensible: because the definition of "bomb" in 26 U.S.C. § 5845(f)(1)(A) does not specify a minimum amount of powder for a device to be so characterized, it follows that bombs with an explosive capacity "smaller than the explosive capacity of a grenade, mine, or military type bomb" may still fall under 26 U.S.C. § 5845(f)(1).  It does not follow, however, that any device with less explosive capacity than a "grenade, mine, or military type bomb" is a destructive device under 26 U.S.C. § 5845(f)(1), or that that the amount of powder in the device is irrelevant, as the United States seems to suggests, see Motion in Limine at 4.  It is noteworthy that the Seventh Circuit noted that "[t]he prosecution introduced evidence that an explosion of one of [the defendant's] devices could cause property damage and bodily injury."  United States v. Copus, 93 F.3d at 274.  It does not strain the imagination to envision a device containing trace amounts of powder that is unable to cause property damage and bodily injury, or convince a jury that it is a destructive device under 26 U.S.C. § 5845(f)(1).  The Court concludes that the amount of powder in the device may be relevant in the analysis of the device's objective physical characteristics and that Tenth Circuit case law does not bar this evidence.  The Court, therefore, declines to exclude "suggestions by Defense counsel that the amount of powder in the device rendered it harmless."  Motion in Limine at 4.

**IT IS ORDERED** that: (i) the United States of America's Motion in Limine to Preclude Evidence of Defendant's Subjective Intent in Making or Possessing the Device, filed April 24, 2023 (Doc. 61), is granted in part and denied in part; (ii) the Court excludes evidence of Defendant Troy Don Teston's subjective intent in designing the device as irrelevant; (iii) the Court excludes

evidence that Teston's device was poorly constructed as irrelevant; and (iv) the Court declines to exclude evidence that the amount of powder in Teston's device rendered it harmless.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Alexander M.M. Uballez
  United States Attorney
Maria Ysabel Armijo
Christopher McNair
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Stephen A. Taylor
Martin Juarez
Office of the Federal Public Defender
Albuquerque, New Mexico

       *Attorneys for the Defendant*