# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 22-1400 JB

TROY DON TESTON,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed August 9, 2023 (Doc. 121)("Sentencing Objections"). The primary issues are: (i) whether the application of § 2K2.1(b)(3)(B) of the United States Sentencing Guideline Manual's (U.S. Sent'g Comm'n 2023)("U.S.S.G." or "Guidelines") enhancement to Defendant Troy Don Teston's base offense level -- for use of a "destructive device" -- constitutes impermissible "double-counting" under the Sentencing Guidelines, where a "destructive device" is used to calculate Teston's base offense level and also to enhance the base offense level under a specific offense characteristic; (ii) whether Teston is entitled to a downward departure under U.S.S.G. § 4A1.3 and/or a downward variance under 18 U.S.C. § 3553 based on a theory that Teston's predominately drug-related criminal history "over-represents" his criminal history score, and the recent amendments to the Guidelines also suggest a downward departure on the basis of this criminal history "over-represent[ation]"; and (iii) whether a downward departure under U.S.S.G. § 5K2.20(b) and/or a downward variance under 18 U.S.C. § 3553 is warranted owing to the aberrant nature of the present offense with respect to Teston's prior criminal history. The Court: (i) overrules Teston's first Objection, because the Court concludes that the relevant sections of

U.S.S.G. § 2K2.1 do not support his contention of "double counting," given that the Guidelines explicitly allow for the enhancement of Teston's base offense level by § 2K2.1(b)(3)(B)'s specific offense characteristic; (ii) overrules Teston's second Objection because it relies on an incorrect interpretation of U.S.S.G. § 4A1.3's parameters for a downward sentencing departure, as that Guidelines provision contemplates a different criminal history "over-represent[ation]" than Teston describes in his Objection; and (iii) overrules Teston's third Objection because it relies on a misinterpretation of U.S.S.G. § 5K2.20(b)'s parameters for a downward sentencing departure, as the Guideline's apparent interpretation of "aberrant" behavior differs significantly from Teston's proffered interpretation.   Accordingly, the Court overrules Teston's requests for a downward departure under the Guidelines.  The Court will entertain any considerations related to a downward variance at the sentencing hearing.

## FINDINGS OF FACT

The Court takes its facts from the Presentence Investigation Report (dated July 10, 2023), filed July 19, 2023 (Doc. 117)("PSR"), and the testimony given at the April 20, 2023 hearing.  See Clerk's Minutes at 1, filed April 20, 2023 (Doc. 71).  Teston in his Sentencing Objections does not make any specific allegations of factual inaccuracy in the PSR, and accordingly the Court accepts the factual portions of the PSR as findings of fact.  See Fed. R. Crim. P. 32(i)(3)(A)("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."); United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006)("[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make 'specific allegations' of factual inaccuracy." (source of quoted material not cited)).  Additionally, the Court makes its findings of fact by a preponderance of the evidence.  See United States v. Williams, No. CR. 17-2556, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States

v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)).  See also United States v. Zapata, 546 F.3d 1179,

1192 (10th Cir. 2008).  The Court may rely on hearsay if the hearsay is reliable.  See United States

v. Banda, 168 F. App'x 284, 289 (10th Cir. 2006)(unpublished).[1]  The evidence and information

upon which the Court relies must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In

resolving any dispute concerning a factor important to the sentencing determination, the court may

consider relevant information without regard to its admissibility under the rules of evidence

applicable at trial, provided that the information has sufficient indicia of reliability to support its

probable accuracy.").

    **1.**    **Teston's criminal history.**

    1.    On October 22, 2002, in the 140th District Court in Lubbock, Texas, Teston was

given a three years' deferred sentence, and three years of supervised probation owing to a charge

of possession of a controlled substance.  See PSR ¶ 29, at 7.

---

[1]United States v. Banda is an unpublished opinion, but the Court can rely on a United States
Court of Appeals for the Tenth Circuit unpublished opinion to the extent its reasoned analysis is
persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not
precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored. [. . .]
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished
Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that United
States v. Banda, as well as United States v. Myers, No. 22-3113, 2023 WL 2566256 (10th Cir.
March 20, 2023) -- discussed below in the Analysis section -- have persuasive value with respect
to material issues in this case, and will assist the Court in its preparation of this Memorandum
Opinion and Order.

2.     Teston was nineteen years old at the time of the arrest for the underlying conduct. See PSR ¶ 29, at 7.

3.     Teston violated his probation on April 26, 2003, for failing to identify himself to law enforcement.  See PSR ¶ 29, at 7.

4.     In the April 26, 2003, incident, he was "unable to provide officers valid identification and appeared to be nervous," and "after several false names and date[s] of birth[], gave officers his name and was found to have several outstanding warrants"; he was arrested for failure to identify.  PSR ¶ 30, at 8.

5.     Between 2003 and 2005, Teston also failed to report to probation on several occasions, failed to make an effort to find suitable employment, failed to pay fines and fees, failed to pay restitution, and failed to complete the Drug Offender Program.  See PSR ¶ 29, at 7.

6.     On April 19, 2005, Teston was arrested on drug offenses in the County of Roosevelt, Ninth Judicial District Court, State of New Mexico.  See PSR ¶ 31, at 8.

7.     For this offense, Teston was given three years of custody -- which was suspended -- and three years of supervised probation.  See PSR ¶ 31, at 8.

8.     On April 18, 2012, in Levelland, Texas, Teston was arrested and charged with possession of a controlled substance, and eventually sentenced to six months custody, twelve months supervised probation, fines and fees, and fifty hours of community service.  See PSR ¶ 32, at 8-9.

9.     On December 5, 2014, in Harris County, Texas, Teston's home was searched following the issuance of a search warrant, and he was arrested for possession of a controlled substance, namely methamphetamine.  See PSR ¶ 34, at 9.

10.     Teston was sentenced to 150 days custody for this offense, with fines and fees.  See PSR ¶ 34, at 9.

11.     On December 27, 2015, in Fort Bend County, Texas, Teston was arrested and charged with aggravated assault with a deadly weapon, owing to an incident in which Teston attacked his ex-girlfriend with a knife, causing a nose injury and a cut on her right upper chest area.  See PSR ¶ 37, at 11.

12.     Teston was sentenced to four years custody, with fines and fees, for his aggravated assault with a deadly weapon charge.  See PSR ¶ 37, at 11.

13.     On February 3, 2020, in the County of Roosevelt, Ninth Judicial District Court, State of New Mexico, Teston was sentenced to eighteen months custody -- which was suspended -- and eighteen months supervised probation for felony possession of a controlled substance, owing to an arrest in October of 2015.  See PSR ¶ 36, at 10.

14.     Although Teston's February 3, 2020, disposition included only the count for possession of a controlled substance, he was originally charged with possession of a firearm or destructive device by a felon.  See PSR ¶ 36, at 10.

15.     On October 5, 2020, the conduct underlying Teston's present convictions occurred -- greater details of which are discussed below -- and Teston was thus found to have violated his probation.  See PSR ¶ 5, at 4; Draft Transcript of April 20, 2023 Hearing at 42:14-20 (taken April 20, 2023)("April 20 Tr.")(Armijo, Osborn).[2]

16.     Owing to this violation -- as well as further violations for methamphetamine use, association with detrimental persons, and missing treatment -- Teston's supervised probation for

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

his February 3, 2020, adjudication was revoked and he was remanded to custody on February 1, 2021.  See PSR ¶ 36, at 10.

17.     On July 29, 2021, Teston was arrested for possession of a controlled substance after his probation officer located narcotics in his bedroom.  See PSR ¶ 38, at 11.

18.     On March 30, 2022, Teston pled to the lesser included offense of attempt to commit possession of a controlled substance, and received a sentence of 364 days in custody -- which was suspended -- and 364 days of supervised probation, with fines and fees.  See PSR ¶ 38, at 11.

19.     On August 11, 2021, Teston was arrested for possession of a controlled substance after being found unresponsive in a car at a fast-food drive-thru window, with drugs and drug paraphernalia in his vehicle.  See PSR ¶ 39, at 12.

20.     Teston failed a field sobriety test and he was arrested and charged with possession of a controlled substance and DWI.  Teston eventually pled to the lesser included offense of attempt to commit possession of a controlled substance and DWI, receiving a suspended sentence of 364 days in custody for the controlled substance count, a suspended sentence of ninety days in custody for the DWI, and 364 days of supervised probation for both counts to run consecutively to his other March 30, 2022 disposition.  See PSR ¶ 39, at 12.

21.     Teston's PSR also contains descriptions of various incidents with law enforcement that did not result in the imposition of criminal punishment: one allegation involving illegal possession of a semi-automatic pistol by a felon, see PSR ¶¶ 44-45, at 13, and one for an incident involving alleged threats of violence with a deadly weapon, see PSR ¶ 46, at 13.

    2.     **Conduct Related to the Conviction in this Case**.

22.     As noted above, on February 3, 2020, Teston received a suspended sentence for possession of a controlled substance.  See April 20 Tr. at 32:24-33:4 (Armijo, Osborn); Amended

Judgment, Sentence, and Order Suspending Sentence at 1, filed April 14, 2023 (Doc. 49-1)(admitted on April 20, 2023, at the suppression hearing as United States Ex. 1)("Amended Judgment").

23.     In connection with his suspended sentence, Teston received an Order of Probation, which Teston signed on February 7, 2020.  See April 20 Tr. at 33:5-19 (Armijo, Osborn); Order of Probation at 1-3 (dated February 7, 2020), filed April 14, 2023 (Doc. 49-2)(admitted on April 20, 2023, at the suppression hearing as United States Ex. 2).

24.     The Order of Probation required Teston not to violate the laws of the State of New Mexico or any other jurisdiction.  See Order of Probation ¶ 1, at 1; April 20 Tr. at 33:20-25 (Armijo, Osborn).

25.     The Order of Probation required Teston not to "buy, sell, own or have in [his] possession, at any time, firearms, ammunition, or other deadly weapons."  Order of Probation ¶ 8, at 2.  See April 20 Tr. at 34:1-13 (Armijo, Osborn); id. at 48:11-15 (Osborn, Taylor).

26.     The Order of Probation permits Teston's probation officer to search his "person, automobile, residence, property and/or living quarters if he/she has reasonable cause to believe the search will produce evidence of a violation of [Teston's] conditions of probation."  Order of Probation ¶ 6, at 1.  See April 20 Tr. at 34:14-25 (Armijo, Osborn).

27.     At an October 5, 2020, probation appointment in Portales, New Mexico, Teston's truck was searched after: (i) Teston was unable to produce a saliva for twenty minutes because of "dry mouth,"[3] suggesting the use of illegal narcotics; (ii) Teston's probation officer saw, in plain

---

[3]Dry mouth is a symptom of methamphetamine use, see Meth Mouth, Wikipedia, https://en.wikipedia.org/wiki/Meth_mouth (last visited October 12, 2023), and of marijuana use, see Effects of Cannabis, Wikipedia, https://en.wikipedia.org/wiki/Effects_of_cannabis (last visited October 12, 2023).

view, a carbon dioxide ("$CO_2$") canister in Teston's truck, suggesting the presence of firearms; and (iii) Teston's subsequent urine analysis test produced (a) an inconclusive result for methamphetamine, which a laboratory did not report to be negative until after the search of Teston's truck, and which raised the possibility of his using methamphetamine and (b) a positive result for marijuana, which raised the possibility of his driving under the influence of marijuana. See April 20 Tr. at 39:25-40:6 (Armijo, Osborn); id. at 49:7-22 (Osborn, Taylor).

28.     While searching Teston's truck, Osborn found metal rods, a pill, fireworks, knives, a machete, a $CO_2$ canister with wires and screws attached, pipes with residue on them, a hypodermic needle, marijuana, and a $CO_2$ canister with gun powder.  See April 20 Tr. at 39:12-22 (Armijo, Osborn); id. at 41:20-42:13 (Osborn); id. at 59:10-12 (Armijo, Osborn); id. at 59:21-22 (Armijo, Osborn); id. at 59:23-60:16 (Armijo, Osborn).

29.     Officers also found two galvanized steel pipes with end caps and multiple containers of a powdery substance consistent with gun powder.  See PSR ¶ 6, at 5

30.     Officers also found a $CO_2$ canister with multiple modifications: The canister had a metal tab inserted into the neck opening, tape wrapped around the bottom, multiple screws in the imbedded in the body of the canister, and metal wire wrapped around the outside.  See PSR ¶ 6, at 5.

31.     Upon finding the modified canister, the probation officers conducting the search contacted the Portales Police Department and the New Mexico State Bomb Squad.  See PSR ¶ 7, at 5.

32.     Bomb technicians determined -- via x-rays -- that the modified canister contained a powdery filler.  See PSR ¶ 7, at 5.

33.     The powdery substance was removed to render the device safe, and bomb technicians performed burn tests on the substance and determined that the power was "energetic" -- i.e., flammable.  PSR ¶ 7, at 5.

34.     Teston admitted he had manufactured the device on the tailgate of his truck in Lazbuddie, Texas.  See PSR ¶ 8, at 5.

35.     During a post-interview search of Teston's home, officers located additional $CO_2$ canisters and metal wire consistent with the modified canister found in Teston's truck.  See PSR ¶ 8, at 5.

36.     Laboratory analysis indicated that the powder found in the modified canister -- as well as elsewhere in Teston's truck -- was a double-base smokeless power, which is a commercially available gunpowder often used in the manufacturing of ammunition.  See PSR ¶ 9, at 5.

37.     The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the modified canister and determined that the device was similar in design to a "cricket" -- which the PSR states is a bomb made from a $CO_2$ canister.  PSR ¶ 10, at 5.

38.     ATF concluded that the explosion of the modified canister found in Teston's truck would produce blast and thermal effects, and projectile fragmentation at high velocity, which would be capable of causing property damage, injury, and/or death to nearby persons.  See PSR ¶ 10, at 5.

39.     At trial, the jury found -- beyond a reasonable doubt -- that Teston's modified canister was a "destructive device" pursuant to the statutory definition at 26 U.S.C. § 5845(f). Court's Final Jury Instructions at 16-17, filed May 9, 2023 (Doc. 108).  See Verdict (dated May 9, 2023), filed May 9, 2023 (Doc. 111).

**PROCEDURAL BACKGROUND**

Teston's Sentencing Objections come after his convictions following a jury trial. In this Section, the Court first outlines the procedural history of his indictments. Next, the Court discusses his jury trial and convictions. Last, the Court describes specifically the nature of his Objections, as well as the United States' and the United States Probation Office's responses to the Objections.

1.    **The Indictments**.

The United States brought an Indictment, filed August 23, 2022 (Doc. 1), against Teston containing two counts: (i) Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); and (ii) Count 2, Possession of an Unregistered Firearm (Destructive Device) under 26 U.S.C. §§ 5841(a), 5845(a)(5), 5861(d), and 5871. See Indictment at 1-2. The Indictment alleges that Teston, a felon with prior convictions for aggravated assault with a deadly weapon and possession of controlled substances, "knowingly possessed explosives," and "knowingly possessed a firearm, that is, a destructive device, and said firearm was not registered to him in the National Firearms Registration and Transfer Record." Indictment at 1. An Arrest Warrant, filed August 23, 2022 (Doc. 3), was issued for Teston, and he was arrested on September 13, 2022. See September 13, 2022 Docket Entry (no document number)(text-only). On September 16, 2022, the Honorable Steven C. Yarbrough, United States Magistrate Judge for the United States District Court for the District of New Mexico, placed Teston on supervised release, see Order Setting Conditions of Release, filed September 16, 2022 (Doc. 16), the conditions for which Magistrate Judge Yarbrough subsequently modified, see Order Modifying Conditions of Release, filed November 23, 2022 (Doc. 20).

On March 15, 2023, the United States filed a Superseding Indictment, filed March 15, 2023 (Doc. 34). In the Superseding Indictment, the Grand Jury charges Teston with three counts: (i) the

original Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); (ii) an amended Count 2, Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record under 26 U.S.C. §§ 5841, 5861(d) and 5871; and (iii) a new Count 3, Making of an Unregistered Firearm under 26 U.S.C. §§ 5841, 5861(f), and 5871.  See Superseding Indictment at 1-2.  The allegations in the Superseding Indictment's Count 1 are unchanged from those in the Indictment.  Compare Indictment at 1, with Superseding Indictment at 1.  The amended Count 2 states that Teston "knowingly possessed a firearm, a destructive device, more fully described as a flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, that was not registered in the National Firearms Registration and Transfer Record."  Superseding Indictment at 1-2.  The new Count 3 states that Teston made the "firearm, specifically, a destructive device" that Count 2 describes, and that it is "a destructive device as defined pursuant to 26 U.S.C. §§ 5845(a)(8), (f)(1), and (f)(3), that was not registered in the National Firearms Registration and Transfer Record."  Superseding Indictment at 2.

On April 19, 2023, the United States filed its Second Superseding Indictment (Doc. 55).  In the Second Superseding Indictment, the Grand Jury charges Teston with four counts: (i) the original Count 1, Felon in Possession of Explosives under 18 U.S.C. § 842(i); (ii) an amended Count 2, Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record under 26 U.S.C. §§ 5841, 5861(d) and 5871; (iii) an amended Count 3, Making of an Unregistered Firearm under 26 U.S.C. §§ 5841, 5861(f), and 5871; and (iv) a new Count 4, Felon in Possession of Ammunition under 18 U.S.C. §§ 922(g)(1) and 924.  See Second Superseding Indictment at 1-3.  The allegations in the Second Superseding Indictment's Count 1 are unchanged from those in the Indictment and Superseding Indictment:

Teston, knowing that he had been convicted to at least one crime punishable by imprisonment for a term exceeding one year, specifically:

    (1)    aggravated assault with a deadly weapon, and

    (2)    possession of a controlled substance,

knowingly possessed explosives in and affecting commerce.

    In violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

Second Superseding Indictment at 1.  The amended Count 2 adds to the Superseding Indictment's

allegations references to 26 U.S.C. § 5845(a) and (f):

Teston[] knowingly possessed a firearm as defined by 26 U.S.C. § 5845(a) and (f), that is, a destructive device, made from a flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, that was not registered in the National Firearms Registration and Transfer Record.

    In violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

Second Superseding Indictment at 2.  The amended Count 3 eliminates specific reference to the

26 U.S.C. §§ 5845(f)(3), instead referencing only 26 U.S.C. §§ 5845(a)(8) and (f)(1):

Teston[] knowingly made a firearm as defined by 26 U.S.C. § 5845(a) and (f), that is a destructive device, made from a flattened ball morphology, double base smokeless powder, an expended Crosman 12 gram $CO_2$ cartridge, screws, flattened metal, wire and tape, which is a destructive device as defined pursuant to 26 U.S.C. §§ 5845(a)(8) and (f)(1), that was not registered in the National Firearms Registration and Transfer Record.

    In violation of 26 U.S.C. §§ 5841, 5861(f) and 5871.

Second Superseding Indictment at 2.  The new Count 4 alleges that Teston was a felon in

possession of ammunition:

Teston, knowing that he had been convicted to at least one crime punishable by imprisonment for a term exceeding one year, specifically:

    (1)    aggravated assault with a deadly weapon, and

    (2)    possession of a controlled substance,

knowingly possessed ammunition in and affecting commerce.

        In violation of 18 U.S.C. §§ 922(g)(1) and 924.

Second Superseding Indictment at 2.  The Second Superseding Indictment adds additionally three

Forfeiture Allegations.  <u>See</u> Second Superseding Indictment at 3.  The First Forfeiture Allegation

states:

> Upon conviction of any offense in violation of 18 U.S.C. § 842 (i), . . . Teston[] shall forfeit to the United States, pursuant to 18 U.S.C. §§ 844(c)(1), 981(a)(1)(C), 982(a)(2)(B), and 28 U.S.C. § 2461(c), any explosive materials involved or used or intended to be used in the offense, and any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to:
>
>     a.    double base smokeless powder.

Second Superseding Indictment at 3.  The Second Forfeiture Allegation states:

> Upon conviction of any offense in violation of 26 U.S.C. § 5861, . . . Teston[] shall forfeit to the United States, pursuant to[]26 U.S.C. § 5872 and 28 U.S.C. § 2461(c), any firearms involved in the commission of the offense(s), including, but not limited to:
>
>     a.    double base smokeless powder.

Second Superseding Indictment at 3.  The Third Forfeiture Allegation states:

> Upon conviction of any offense in violation of 18 U.S.C. § 922(g), . . . Teston[] shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the commission of the offense(s), including, but not limited to:
>
>     a.    double base smokeless powder.

Second Superseding Indictment at 3.

    **2.**    **<u>The trial</u>.**

    Teston's case proceeded to a jury trial on May 8, 2023.  <u>See</u> Clerk's Minutes at 1-15, filed

May 8, 2023 (Doc. 112).  On May 9, 2023, Teston was found guilty of: (i) felon in possession of

explosives, contrary to 18 U.S.C. § 842(i); (ii) possession of a firearm not registered with the national firearms, registration and transfer record, contrary to 26 U.S.C. §§ 5841, 5861(d), and 5871; (iii) making an unregistered firearm, contrary to 26 U.S.C. §§ 5841, 5861(f), and 5871; and (iv) felon in possession of ammunition, contrary to 18 U.S.C. §§ 922(g)(1) and 924.  See Verdict at 1; Second Superseding Indictment at 1-2.

      **3.**     **The Objections and Responses.**

      The United States Probation Office ("USPO") has submitted a Presentence Investigation Report.  See PSR.  Sentencing is set for November 15, 2023.  See Order to Continue Sentencing, filed September 19, 2023 (Doc. 131).

      **a.**     **The Objections.**

      Teston filed objections to the USPO's PSR.  See Sentencing Objections at 1.  Teston makes three objections.  See Sentencing Objections at 1-5.  First, Teston objects to what he describes as "double-counting" that the USPO used to arrive at his offense level computation.  Sentencing Objections at 1-3.  See PSR at 6-7.  The crux of this contention is that the PSR "impermissibly enhanc[es]" Teston's sentence, because it counts a single "destructive device" for the purposes of both: (i) setting the base offense level ("BOL"); and (ii) enhancing the BOL under U.S.S.G. § 2K2.1(b)(3)(B).  See Sentencing Objections at 1-3.  According to Teston, this method of calculation is "doubtlessly double counting," Sentencing Objection at 2, under relevant case law from the United States Court of Appeals for the Tenth Circuit, which states that double-counting is prohibited "when the same conduct on the part of the defendant is used to support separate increases under separate sentence enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes," Sentencing Objections at 1-2 (citing United States v. Terrell, 608 F.3d 679, 683 (10th Cir. 2010)).  Here, Teston argues that this prohibition applies,

because "the same conduct is being used to satisfy both the BOL and enhancement both of which only require that the offense 'involved' a destructive device." Sentencing Objections at 2 (quoting U.S.S.G. §§ 2K2.1(a)(4)(B) and (b)(3)(B)). Moreover, he argues that both U.S.S.G. §§ 2K2.1(a)(4)(B) and (b)(3)(B) "serve identical purposes," because both seek to "punish the commission of the offense involving a destructive device." Sentencing Objections at 2.

Teston acknowledges that his double-counting analysis contradicts the relevant Application Notes, one of which, Note 7 -- in Teston's view -- "would seemingly permit this impermissible double-counting even though its underlying concern is not present." Sentencing Objections at 3.

> A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) (e.g., subsection (a)(1), (a)(3), (a)(4)(B), or (a)(5)), and the applicable enhancement under subsection (b)(3). Such devices pose a considerably greater risk to the public welfare than other National Firearms Act[, 26 U.S.C. §§ 5801-5872,] weapons.

U.S.S.G. § 2K2.1 cmt. n.7. Despite this apparent contradiction, Teston contends that the Application Note's assertion that "[s]uch [destructive] devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons" is "simply inaccurate." Sentencing Objections at 3. Teston further argues that the circumstances of his case -- in particular -- challenge the notion that the destructive devices pose a greater risk than other weapons. See Sentencing Objections at 3. The final point that Teston makes related to his "double-counting" challenge to the PSR is his -- somewhat tentative -- assertion that "by using the involvement of a destructive device to set the base offense level and then using the same device to enhance that already enhanced offense level," the PSR "seems to punish Mr. Teston twice for the same conduct" and which thereby "may violate the prohibition against Double Jeopardy in the Fifth Amendment to the Federal Constitution." Sentencing Objections at 2.

The next Objection that Teston raises in his Sentencing Objections is that a downward departure from the Sentencing Guidelines -- pursuant to U.S.S.G. § 4A1.3 -- is appropriate in his case because his criminal history is "over-represent[ed]." Sentencing Objections at 3 (point heading). This argument's main thrust is that Teston's prior criminal history is for "convictions and charges . . . for possession of a controlled substance," which are unrelated to his present charges, Sentencing Objections at 3, and therefore his "criminal history category substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes," U.S.S.G. § 4A1.3(b)(1). Teston also notes the upcoming revisions to the Sentencing Guidelines, but concedes that his criminal history category will remain the same under either the relevant current or revised Guidelines. See Sentencing Objections at 4. Nevertheless, he argues that "a downward variance under 18 U.S.C. § 3553 or a guidelines departure is appropriate given the upcoming change in the law and the fact that Mr. Teston's history of drug offenses represent 11 of his CHC points." Sentencing Objections at 4.

Teston's third and final Objection to the PSR is that the criminal wrongdoing which is at issue in this case is "aberrant" and thus he is entitled to a downward departure from the Sentencing Guidelines. Sentencing Objections at 4. To support this contention, he cites to United States v. Benally, 215 F.3d 1068, 1073 (10th Cir. 2000), and to 18 U.S.C. § 3553. On the apparent basis of these legal authorities, Teston argues that his conviction in this case for crimes involving a destructive device is "entirely aberrant conduct for him" and thus this factor should justify a downward departure from the Guidelines' sentencing range. Sentencing Objections at 5.

      b.      **The United States' Response.**

The United States responds. See United States' Response to Defendant's Objections to Presentence Report, filed August 30, 2023 (Doc. 127)("Response"). The United States addresses

Teston's first objection regarding the "double-counting" theory by contending that "[n]ot all double counting is *per se* improper."  Response at 1.  Instead, it cites to a case from the United States Court of Appeals for the First Circuit for the proposition that double-counting is "often perfectly proper" and that "the Guidelines themselves are the most helpful aid in the task of separating permissible double counting from its impermissible counterpart."  Response at 1-2 (citing United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994)).  The United States references Application Note 7 to U.S.S.G. § 2K2.1 -- discussed above -- and concludes that, "[b]ecause the Guidelines specifically provide that a defendant's base offense level may be increased for an offense involving a destructive device and the defendant should receive an enhancement pursuant to § 2K2.1(b)(3)(B), [the PSR's calculation in this case] is not impermissible double-counting." Response at 2.

Next, the United States responds to Teston's contention that his predominately drug-offense related criminal history renders that category "over-represented."  Response at 2.  The United States asserts that § 4A1.3(b)(1) provides that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that defendant will commit other crimes."  Response at 2 (citing U.S.S.G. § 4A1.3(b)(1)).  The United States -- citing to the background note for this provision -- contends that a departure under this provision applies only in "limited circumstances."  Response at 2 (citing U.S.S.G. § 4A1.3, Background). The United States asserts that an example of such a limited circumstance is in Application Note 3 to Section 4A1.3, and states that a downward departure may be warranted in a scenario where a defendant has "two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  Response at 2-3 (citing

U.S.S.G. § 4A1.3 cmt. n.3).   This hypothetical in the Application Notes -- the United States contends -- is "markedly different from Defendant's criminal history," which includes "eleven prior convictions running from 2002-2021," Response at 3 (citing PSR ¶¶ 29-39, at 7-12), and "five other arrests not resulting in convictions during this same timeframe," Response at 3 (citing PSR ¶¶ 43-47, at 12-13).   The United States maintains that, "[g]iven Defendant's consistent criminal history and his high likelihood of recidivism," a downward departure under 4A1.3(b)(1) is unwarranted.   Response at 3.

Last, the United States responds to Teston's contention that he is entitled to a downward departure, because the criminal wrongdoing in this case is "aberrant" -- in the sense that it is unlike his prior criminal history.   See Sentencing Objections at 4-5.   The United States argues that Teston "misapprehends the standard for this type of downward departure."   Response at 3.   The United States asserts that, for a departure from the Guidelines range based on "aberrant behavior," the "relevant inquiry is whether the defendant's criminal act is a deviation from an otherwise law-abiding life, not whether the particular offense of conviction is markedly different that the numerous other crimes a defendant has committed."   Response at 3.   The United States then cites Section 5K2.20(b), stating that the Court can depart downward from the Guidelines "if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation from an otherwise law-abiding life."   Response at 3 (citing U.S.S.G. § 5K2.20(b)).   The United States argues that Teston "could not even establish one of the relevant qualifications for an aberrant behavior departure, much less all three," and thus that the Court should deny his third Objection to the PSR.   Response at 3.

c.    **Addendum to the PSR**.

The USPO submits an Addendum to the Presentence Report, filed August 30, 2023 (Doc. 129)("Addendum").  The USPO acknowledges Teston's Objections and responds to each. See Addendum at 1-3.  In response to Teston's "double counting" Objection, the USPO explains that, in calculating Teston's base offense level and applying the enhancement, the USPO looks to Application Note 7 to U.S.S.G. § 2K2.1, which clarifies that a base level calculation and an enhancement based on a destructive device is permissible; the USPO also states:

> The reasoning behind this is such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons. This enhancement is the minimum the defendant could have received as the Application Note allows for an upward departure if the destructive device involved increased the risk to the public's welfare and/or increased the risk of death or serious bodily injury to others.

Addendum at 1.  Based on this rationale, and Application Note 7 to U.S.S.G. § 2K2.1's apparently explicit approval of the "double counting" that Teston alleges is impermissible, the USPO declines to change its recommendation regarding its BOL and the enhancement of the BOL under U.S.S.G. § 2K2.1(b)(3)(B).  See Addendum at 1.

The USPO responds to Teston's second Objection -- regarding Teston's allegations that his criminal history is over represented -- by mirroring many of the same arguments that the United States forwards.  See Addendum at 2.  Specifically, the USPO states:

> The defendant has been within the criminal justice system since February of 2002, bringing his overall timeline to just shy of 22 years. The defendant has been under supervision on numerous occasions and thus has been afforded the opportunity to address his addiction through treatment to include participation in Adult Drug Court programming. It should be acknowledged that the defendant's youth involved his mother being a drug user which likely contributed to his drug use from a young age. However, a downward departure under USSG § 4A1.3 is for those defendants who have a lower risk of recidivism. In addition to the defendant's extensive timeline of criminal history he was under a criminal justice sentence when he committed the instant offense.

Addendum at 2.  In addition, the USPO also notes that Teston will be subject to a deduction of 1 point from his criminal history if he is sentenced after November 1, 2023 -- pursuant to the new amendment to U.S.S.G. § 4A1.1(e) -- but that, even with this deduction, he will remain in Criminal History Category VI.  See Addendum at 2.  The USPO thus concludes its response to Teston's second Objection by stating that, while "[t]he defendant's drug addiction may be accounted for as an 18 U.S.C. §3553 factor for variance . . . [,] at this time U.S. Probation is opposed to a downward departure under USSG § 4A1.3."  Addendum at 2.

Finally, in response to Teston's third Objection -- his argument that his offense is "aberrant" and thus a downward departure is warranted -- the USPO states that it is opposed to a downward departure, because Teston's criminal behavior "is not aberrant."  Addendum at 2.  Like the United States, the USPO cites the three criteria -- or "requirements" -- for a downward departure under Section 5K2.20(b): "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  Addendum at 2 (citing U.S.S.G. § 5K2.20(b)).  Regarding the first of these criteria, the USPO states that Teston's offense in this case was committed with planning, "as he had to go to Hobby Lobby for some of the supplies and required assembly of the bomb that is not common knowledge to the general public."  Addendum at 2.  The USPO is inconclusive as to the second of the § 5K2.20(b) criterion -- duration -- but as for the third criteria, the USPO asserts that "the instant offenses are not a marked deviation from an otherwise law-abiding life evidenced by his 22-year criminal history."  Addendum at 2.  Accordingly, because the USPO contends that Teston does not meet the requirements for a

departure based on "aberrant behavior," the USPO is opposed to a downward departure on these grounds.  Addendum at 3.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the Sentencing Reform Act's remainder intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense's nature and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines' ranges are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The United States Court of Appeals for the Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v.

Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an

appellate presumption and not one that the trial court can or should apply.  See Rita v. United

States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United

States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing

of factors without any presumption in favor of the advisory[4] Guidelines sentence.  See Rita v.

_____

[4]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated to apply, however, a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, 2010 WL 3075285, at *2-3 (D.N.M. 2010)(Browning, J.).

   The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.  The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . .

   The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation

United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United

States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M.

2008)(Browning, J.).  The Supreme Court recognized, however, that the sentencing judge is "in a

superior position to find facts and judge their import under § 3553(a) in each particular case."

Kimbrough v. United States, 552 U.S. at 89.   Applying § 3553(a)'s factors, the Court has

concluded that the case of an illegal immigrant who re-entered the United States to provide for his

two children and two siblings was not materially differentiated from other re-entry cases, and, thus,

no variance from the Guidelines sentence was warranted.  See United States v. Alemendares-Soto,

---

> marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. 2014)(Browning, J.)(emphasis in original).

No. CR 10-1922, 2010 WL 5476767, at *12 (D.N.M. 2010)(Browning, J.).  On the other hand, in

United States v. Jager, No. CR 10-1531, 2011 WL 831279 (D.N.M. 2011)(Browning, J.), although

the defendant's military service was not present to an unusual degree and, thus, did not warrant a

departure, the Court concluded that a variance was appropriate, because the defendant's military

service was "superior and uniformly outstanding," as the defendant appeared to have been

"trustworthy[] and dedicated, and he served with distinction."  2011 WL 831279, at *14.  See

United States v. Ortega, No. CR 20-1948, 2021 WL 1339415, at *1-2 (D.N.M. Apr. 9,

2021)(Browning, J.).

## LAW REGARDING DOWNWARD DEPARTURES

The General Application Principles of the Guidelines provide the following definitions for

a "departure" and a "downward departure":

> "Departure" means (i) for purposes other than those specified in subdivision (ii), imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence; and (ii) for purposes of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guideline range. "Depart" means grant a departure.
>
> "Downward departure" means departure that effects a sentence less than a sentence that could be imposed under the applicable guideline range or a sentence that is otherwise less than the guideline sentence. "Depart downward" means grant a downward departure.

U.S.S.G § 1B1.1 cmt. n.1(F).  Although this definition is broad, the Tenth Circuit has specified

that a "departure from a guideline sentence is a sentence outside the guideline range but justified

by specific provisions in the guidelines."  United States v. Gantt, 679 F.3d 1240, 1247 (10th Cir.

2012).  See United States v. Barnes, 890 F.3d 910, 920 n.1 (10th Cir. 2018)(noting that a

"downward departure must conform to the Guidelines and give a specific basis for why the

Guidelines do not properly account for the defendant's situation.").[5]  The Guidelines offer many

bases for departure; for example, there are many offense-specific departures found throughout

Chapter 2 of the Guidelines; see, e.g., U.S.S.G. § 2D1.1 cmt. n.27 (departure considerations in

certain drug cases); U.S.S.G. § 2B1.1 cmt. n.21(B)-(D) (listing downward departure considerations

for theft and fraud crimes); and there are more general bases for a departure found in the policy

statements in Chapter 5, see, e.g., U.S.S.G. § 5H1.3 ("Mental and emotional conditions may be

relevant in determining whether a departure is warranted"); U.S.S.G. § 5H1.11 ("Military service

may be relevant in determining whether a departure is warranted, if the military service . . . is

present to an unusual degree and distinguishes the case from the typical cases covered by the

guidelines.").  In addition, as noted in the definition above, Chapter 4 of the Guidelines contains

rationales for downward departures that are related to a defendant's criminal history.  See U.S.S.G.

§ 4A1.3(b).

The Guidelines "place essentially no limit on the number of potential factors that may

warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996). See United States v.

Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite

number of factors which may warrant a departure"); 18 U.S.C. § 3661 ("No limitation shall be

placed on the information concerning the background, character, and conduct of a person convicted

of an offense which a court of the United States may receive and consider for the purpose of

imposing an appropriate sentence.").  A departure is warranted if the case is "unusual enough for

_____

[5]Departures contrast with a variance, which "is based entirely on the sentencing court's discretionary authority as long as the court justifies its sentence based on the § 3553(a) factors." United States v. Barnes, 890 F.3d at 920 n.1.  See United States v. Gantt, 679 F.3d at 1247 ("A variance can be imposed without compliance with the rigorous requirements for departures.")(citing United States v. Martinez-Barragan, 545 F.3d 894, 901 (10th Cir. 2008)).

it to fall outside the heartland of cases in the Guideline." <u>Koon v. United States</u>, 518 U.S. at 92.

<u>Accord</u> <u>United States v. Lewellen</u>, No. CR 11-1524, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

<u>Koon v. United States</u>, 518 U.S. at 113.

For example, in <u>United States v. Jim</u>, the Court did not grant a defendant's request for a downward departure under U.S.S.G. § 4A1.3(b), where the defendant argued that his criminal history category over-represented the seriousness of his criminal history and the likelihood that he would commit other crimes. <u>See</u> 877 F. Supp. 2d 1018, 1044-45 (D.N.M. 2012)(Browning, J.). The Court noted that Jim's criminal history included: (i) two DWI convictions; (ii) a conviction for Roadway Laned Traffic; and (iii) a conviction for Abandonment or Abuse of a Child. <u>See</u> 877 F. Supp. 2d at 1044-45. The Court concluded that a criminal history category of II did not over-represent Jim's criminal history, explaining that Jim's previous convictions involved alcohol and driving, demonstrating a pattern of aberrant use of alcohol also seen in the offense for which he was sentenced -- sexual assault -- as Jim asserted that both he and the victim were intoxicated at the time he assaulted the victim. <u>See</u> 877 F. Supp. 2d at 1022-23, 1044-45. The Court noted that it "does not take much for a defendant to qualify for a criminal history category of II" and that the Court could not distinguish Jim's criminal history from that of other defendants whom the Court regularly sees who also have a criminal history category of II, and thus denied Jim's request for a downward departure under U.S.S.G. § 4A1.3. 877 F. Supp. 2d at 1044-45.

In <u>United States v. Jager</u> -- discussed above -- the Court denied a defendant's request for a downward departure, under U.S.S.G. § 5H1.11, based upon the defendant's eleven years of military service. <u>See</u> 2011 WL 831279, at *3.  Even though Jager had received exemplary reviews in his performance reports, earning either the highest or second highest ratings possible, during his military career, the Court concluded that his service was not present in an unusual degree or distinguishable from other cases which the Guidelines cover.  <u>See</u> 2011 WL 831279, at * 11.  The Court noted that in many child pornography cases, such as Jager's, the defendant leads an exemplary life publicly, while engaging in a sordid secret life.  <u>See</u> 2011 WL 831279, at * 11. Jager thus was not distinguishable from other defendants sentenced under the Guidelines.  <u>See</u> 2011 WL 831279, at * 11.  Additionally, Jager was not in intense combat during his military career; most of his time was spent in the support role of a mechanic.  <u>See</u> 2011 WL 831279, at * 11.  The Court concluded, thus, that Jager's military service did not distinguish his case from those of many other defendants who commit crimes involving child pornography, and the Court denied Jager's request for a downward departure.  <u>See</u> 2011 WL 831279, at *10-11.

## ANALYSIS

The Court overrules Teston's Objections as to his theory of "double counting" and denies his requests for departure.  As the Court explains below, these Objections and requests lack a sound basis in the applicable law and the relevant facts, because they rely on misinterpretations of the cited provisions of the Guidelines, and the facts and circumstances of Teston's case do not support departures based on the cited provisions.  The Court preserves its rulings on any potential Guideline variance -- under 18 U.S.C. § 3553(a) -- until the sentencing hearing.

I.    **THE PSR'S CALCULATION OF TESTON'S BOL IS NOT THE PRODUCT OF IMPERMISSIBLE "DOUBLE COUNTING".**

As noted, Teston's first Objection alleges impermissible "double counting" in the determination of his offense level because of Teston's "destructive device" -- as 26 U.S.C. § 5845(f) defines that term -- being used to calculate both: (1) his BOL; and (2) a specific offense enhancement to his BOL.  Impermissible double-counting occurs when "the same conduct on the part of the defendant is used to support separate increases under separate sentence enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."  United States v. Terrell, 608 F.3d 679, 683 (10th Cir. 2010)(quoting United States v. Rojas, 531 F.3d 1203, 1207 (10th Cir. 2008)).  To provide necessary context for this Objection, the Court outlines the grounds on which the PSR relies to calculate Teston's BOL and enhancement.  In the PSR, the USPO determines that all four of Teston's convictions are grouped for the purpose of calculating Teston's sentence under the Guidelines.  See PSR ¶ 16, at 6; U.S.S.G. § 3D1.2(c).  The Guidelines specifically contemplate this grouping practice, which the Guidelines discuss in detail: Chapter 3, Part D, of the Guidelines provide general instructions on how to calculate a single offense level when a criminal defendant is convicted under multiple counts -- whether the counts stem from the same indictment, or whether the counts are in different indictments for which sentences are imposed at the same time or in the same proceedings.  See U.S.S.G. ch. 3, pt. D, introductory cmt. In Teston's case, the USPO determines that his offenses are to be grouped "because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s)."  PSR ¶ 16, at 6 (citing U.S.S.G. § 3D1.2(c)). U.S.S.G. § 3D1.2 -- the Guidelines provision which the PSR cites -- instructs that all counts "involving substantially the same harm" shall be grouped together, and § 3D1.2(c) specifies that counts "involve substantially the same harm" when "one of the counts embodies conduct that is

- 29 -

treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to

another of the counts."  The cited Guideline provision contains an Application Note that reads:

> Subsection (c) provides that when conduct that represents a separate count, *e.g.*,
> bodily injury or obstruction of justice, is also a specific offense characteristic in or
> other adjustment to another count, the count represented by that conduct is to be
> grouped with the count to which it constitutes an aggravating factor.  This provision
> prevents "double counting" of offense behavior. Of course, this rule applies only if
> the offenses are closely related.

U.S.S.G. § 3D1.2 cmt. n.5.  Pursuant to this guidance, the PSR calculates Teston's BOL according

to one of his convictions under 26 U.S.C. § 5861 -- his possession of a "firearm" not registered

with the national firearms, registration and transfer record; or his making an unregistered

"firearm"[6] -- and then uses the fact that his offense involves a destructive device as a means of

enhancing that BOL.  PSR ¶¶ 17-18, at 6.  As the Application Note for U.S.S.G. § 3D1.2 states,

this grouping methodology functions, in part, to "prevent[] 'double counting' of offense behavior."

U.S.S.G. § 3D1.2 cmt. n.5 (source of quoted material not cited).  Because Teston's convictions

under 26 U.S.C. § 5861, however, are based on his possession of and making of a "destructive

device" -- as 26 U.S.C. § 5845(f) defines that term -- Teston argues that the use of his convictions

under 26 U.S.C. § 5861 to calculate his BOL prevents the use of this same "destructive device" to

enhance his BOL pursuant to U.S.S.G. § 2K2.1's specific offense characteristics.   Sentencing

Objections at 1-2.

---

[6]The PSR is unspecific as to which of these convictions forms the basis of Teston's BOL,
but the PSR is clear that his BOL is calculated pursuant to a conviction under 26 U.S.C. § 5861.
See PSR ¶ 17, at 6.  Moreover, the "firearm" at issue in Teston's conviction is a "destructive
device."  26 U.S.C. § 5845(a)(8)(explaining that "a destructive device" is a "firearm" for the
purposes of the statute).  See 26 U.S.C. § 5845(f)(defining the term "destructive device"); Second
Superseding Indictment at 2.

At the outset, the Court notes that the United States, Teston, and the USPO agree that one of the Application Notes to U.S.S.G. § 2K2.1 explicitly contemplates the scenario at issue in this Objection, and appears to bless the approach that the PSR takes.  See Sentencing Objections at 3; Response at 2; Addendum at 1.  The relevant Application Note reads:

> A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) (e.g., subsection (a)(1), (a)(3), (a)(4)(B), or (a)(5)), and the applicable enhancement under subsection (b)(3).  Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons.

U.S.S.G. § 2K2.1 cmt. n.7.  In interpreting the Guidelines, Tenth Circuit law commands that courts "look at the language in the guideline itself, as well as at the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission," and that the interpretative or explanatory commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  United States v. Cornelio-Pena, 435 F.3d 1279, 1282 (10th Cir. 2006).  Accord United States v. Maloid, 71 F.4th 795, 798 (10th Cir. 2023).  Pursuant to this interpretive command, the Court concludes that Application Note 7 to U.S.S.G. § 2K2.1 -- effectively -- answers Teston's Objection: as that commentary reflects, the Sentencing Commission considered the application of a specific offense characteristics enhancement when the base offense "involves" a destructive device and deems those crimes worthy of greater punishment because of the particular danger such destructive devices pose.

In his Sentencing Objections, Teston takes issue with the Application Notes' assertion that destructive devices "pose a considerably greater risk to the public welfare than other National Firearms Act weapons."  U.S.S.G. § 2K2.1 cmt. n.7.  See Sentencing Objections at 3.  Teston argues that this statement is "simply inaccurate," Sentencing Objection at 3, and cites to empirical

statistics that he says prove the statement's inaccuracy.  Sentencing Objections at 3 n.1 (citing

Ctrs. for Disease Control & Prevention, Fast Facts: Firearm Violence and Injury Prevention,

https://www.cdc.gov/violenceprevention/firearms /fastfact.html (last visited October 31, 2022);

United Nations, The Deadly Legacy of Landmines, https://news.un.org/en/story/2023/04/1135252

(last visited October 31, 2023)).    Teston's argument, in effect, forwards a policy-based

disagreement with the Guidelines commentary.   Tenth Circuit case law instructs, however, that

this commentary generally governs unless "it violates the Constitution or a federal statute, or is

inconsistent with, or a plainly erroneous reading of, that guideline."  United States v. Cornelio-

Pena, 435 F.3d at 1282.   The Court concludes that Teston's disagreement with the policy rationale

of the Guidelines is -- in and of itself -- not a sufficient basis for the Court to diverge from the

Guidelines commentary's clear guidance.  Of course, Teston remains free to urge the Court to vary

from the correctly calculated Guidelines range on the basis of a policy disagreement, see

Kimbrough v. United States, 552 U.S. at 108-112, but policy disagreements with the Guidelines

must not alter the Court's initial analysis of the applicable Guidelines range.  Indeed, in the first

instance, "district courts must treat the Guidelines as the 'starting point and the initial

benchmark.'" Kimbrough v. United States, 552 U.S. at 108 (quoting Gall v. United States, 552

U.S. at 49).  Later, when assessing a variance, the Court may consider policy-based disagreements

with the Guidelines.   See United States v. Valdez, 77 F. Supp. 3d 1115, 1134 (D.N.M.

2014)(Browning, J.)(discussing "Kimbrough disagreements," which are variances from the

Guidelines ranges made for no other reason than having policy disagreements with the Guidelines).

For the Court not to calculate correctly the applicable Guideline range because of a policy

disagreement with a Guidelines enhancement would be procedurally unreasonable and error.  See

United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006)("A sentence cannot . . . be considered

reasonable if the manner in which it was determined was unreasonable, i.e., if it was based on an improper determination of the applicable Guidelines range."). As the Court discussed above -- see supra note 3 -- there is a specific analytic sequence which the Court must deploy to ensure that a sentence is procedurally reasonable and that sequence involves -- in the first instance -- a proper calculation of the sentencing range based on the Guidelines. See Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court may have a disagreement with the Guidelines, but that comes later -- in the variance phase, after the Guidelines are correctly calculated. Accordingly, the Court concludes that Teston's policy disagreement with the Guidelines regarding the risk to public welfare posed by destructive devices does not affect the initial calculation of the Guidelines. At the variance phase of the analysis, however, Teston is free to argue that the particular destructive device at issue in his case does not merit heightened punishment.

Next, to further support his allegation of impermissible double counting, Teston cites to a recent unpublished Tenth Circuit order and judgment that deals with a similar issue: United States v. Myers, No. 22-3113, 2023 WL 2566256 (10th Cir. March 20, 2023)("Myers"). The Court, however, reads Myers to be unfavorable, if not directly contrary, to Teston's position. In Myers, the Tenth Circuit reviewed -- pursuant to a brief filed under Anders v. California, 386 U.S. 738 (1967)[7] -- a challenge to a sentence imposed on the basis of the same "destructive device"

---

[7]The Tenth Circuit explains the process under Anders v. California, 386 U.S. 738, as follows:

The Supreme Court's decision in *Anders v. California,* 386 U.S. 738 [. . .] (1967), authorizes counsel to request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous. *Id.* at 744 [. . .]. Under *Anders,* counsel must submit a brief to the client and the appellate court indicating any potential appealable issues based on the record. *Id.* The client may then choose to submit arguments to the court. *Id.* The

enhancement that Teston challenges, namely, U.S.S.G. §§ 2K2.1(b)(3)(B).   Myers, 2023 WL 2566256, at *1-2.  The defendant, Myers, pled guilty to a single count of possessing a firearm after a felony conviction, contrary to 18 U.S.C. § 922(g)(1).  Myers, 2023 WL 2566256, at *1.  Myers' conviction factually was based on the possession of three "firearms" as 26 U.S.C. § 5845(a) defines that term: two handguns and one "pipe bomb."  Myers, 2023 WL 2566256, at *1-2.   The pipe bomb was defined as a "destructive device" under 26 U.S.C. § 5845(f).  Myers, 2023 WL 2566256, at *1.  Following his plea, Myers' sentencing range under the Guidelines was calculated using a BOL of 20 under U.S.S.G. § 2K2.1(a)(4)(B), which was further enhanced 2 levels under U.S.S.G. §§ 2K2.1(b)(1)(A), because of the number of firearms involved in the offense, and another 2 levels under U.S.S.G. §§ 2K2.1(b)(3)(B), because the offense involved a "destructive device."  Myers, 2023 WL 2566256, at *1-2.

        In his appeal, Myers argued that "the district court used the pipe-bomb possession twice by relying on it for two separate specific-offense characteristics."  Myers, 2023 WL 2566256, at *3.  That is, Myers contended that the "destructive device" involved in his offense was double counted as the basis for both of his enhancements.  Myers, 2023 WL 2566256, at *3.  The Tenth Circuit, however, noted that "double-counting is only prohibited 'when the same conduct on the part of the defendant is used to support separate increases under separate sentence enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes.'"  Myers, 2023 WL 2566256, at *3 (quoting United States v. Terrell, 608 F.3d 679, 683 (10th Cir. 2010)).  Under

---

Court must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous.  Id.  If the court concludes after such an examination that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal.  Id.

United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005)(McConnell, C.J.).

this standard, the Tenth Circuit concluded that the two enhancements -- one for a quantity of firearms involved, and one for the involvement of a "destructive device" -- did not necessarily overlap, were not indistinct, and did not serve identical purposes. Myers, 2023 WL 2566256, at *3.  Accordingly, the Tenth Circuit in Myers concluded that "[t]he district court's use of the pipe bomb for these two distinct purposes was not erroneous."  Myers, 2023 WL 2566256, at *3.

Aside from citing Myers, Teston does not elaborate on how he believes that this case supports his contention that double-counting "doubtlessly" occurred in his case, Sentencing Objections at 2, and the Court does not understand how Myers helps his argument.  As in Myers, the two uses of the "destructive device" in Teston's case -- to calculate the BOL and then enhance it under U.S.S.G. §§ 2K2.1(b)(3)(B) -- do not necessarily overlap, are not indistinct, and do not serve identical purposes.  See United States v. Terrell, 608 F.3d at 683.  The BOL of 20 accounts for the most serious of Teston's grouped offenses -- namely: 26 U.S.C. § 5861, his possession of a firearm not registered with the national firearms, registration and transfer record; or his making an unregistered firearm. His specific offense enhancement under U.S.S.G. §§ 2K2.1(b)(3)(B) is added, because the offense "involved" a "destructive device," which the Guidelines treat as a basis for enhancement because of the "greater risk to the public welfare" that such devises pose. U.S.S.G. § 2K2.1 cmt. n.7.  These two uses of the same "destructive device" in the Guidelines calculation do not necessarily overlap, they are not indistinct, and do not serve identical purposes. See United States v. Terrell, 608 F.3d at 683.  Accordingly, the PSR in Teston's case does not run afoul of any impermissible double counting.

Last, Teston argues that, because the same destructive device is used to set his BOL and apply the enhancement, the result "may" result in a violation of the "prohibition against Double Jeopardy in the Fifth Amendment to the Federal Constitution."  Sentencing Objections at 2.  Teston

cites no authority in support of this argument, only a "but see" citation to <u>Witte v. United States</u>, 515 U.S. 389 (1995), which the Court interprets as a concession that the case cuts against Teston's argument.  In <u>Witte v. United States</u>, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge.  <u>See</u> 515 U.S. 389.  The crux of petitioner's double jeopardy theory in <u>Witte v. United States</u> was that "consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range constitutes 'punishment' for that conduct," and thus the United States cannot indict a defendant based on conduct that previously was considered for sentencing purposes in a separate case.  515 U.S. at 397 (source of quoted material not cited).  The Supreme Court rejected this argument, holding that a defendant is punished -- for the purposes of the Double Jeopardy Clause -- only for the offense for which he or she is convicted, and not for relevant conduct that is considered in calculating a Guidelines range. <u>See</u> 515 U.S. at 397.  To arrive at this conclusion, the Supreme Court explained:

> To the extent that the Guidelines aggravate punishment for related conduct outside the elements of the crime on the theory that such conduct bears on the "character of the offense," the offender is still punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment, not for a *different* offense (which that related conduct may or may not constitute).

<u>Witte v. United States</u>, 515 U.S. at 402-03 (emphasis in original).  This reasoning indicates that sentencing enhancements -- under the auspices of uncharged relevant conduct used to calculate a sentencing range under the Guidelines -- are not "punishment" for the purposes of the Double Jeopardy Clause.  Therefore, the Court concludes that the use of Teston's "destructive device" for the purposes of his sentence enhancement under U.S.S.G. §§ 2K2.1(b)(3)(B) is, likewise, not punishment for the purposes of the Double Jeopardy Clause.  Because Teston is not being constitutionally "punished" for this sentencing enhancement, there is no concern that this enhancement violates the Double Jeopardy Clause.

Accordingly, the Court rejects Teston's double jeopardy argument. In sum, having considered and rejecting all of Teston's arguments related to allegations of double-counting in the calculation of his offense level in the PSR, the Court affirms the PSR's approach to enhancing Teston's BOL under U.S.S.G. §§ 2K2.1(b)(3)(B) and overrules Teston's first Objection.

## II.   TESTON IS NOT ENTITLED TO A DEPARTURE UNDER U.S.S.G. § 4A1.3, AS HIS CRIMINAL HISTORY SCORE DOES NOT OVER-REPRESENT HIS CRIMINAL HISTORY SCORE IN THE MANNER THAT THE PROVISION CONTEMPLATES.

Next, Teston argues that he is entitled to a downward departure under U.S.S.G. § 4A1.3 and/or a downward variance under 18 U.S.C. § 3553 based on his contention that his predominately drug-related criminal history "over-represent[s]" his criminal history score, and also that the recent amendments to the Guidelines suggest a downward departure on the basis of this criminal history. Sentencing Objections at 3. This request for a downward departure is rooted in U.S.S.G. § 4A1.3, and although Teston does not specify a subsection in his Sentencing Objections, he presumably seeks a downward departure under U.S.S.G. § 4A1.3(b)(1), which reads: "STANDARD FOR DOWNWARD DEPARTURE. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." Section 4A1.3(b)(1)'s plain language provides two reasons why a particular defendant's criminal history category might be subject to a downward departure under this provision: (i) because the number assigned to the defendant's criminal history -- based on a mechanical application of the Guidelines -- makes the defendant's past criminal history look worse than it really is; or (ii) the criminal history category -- again, based on a mechanical application of the Guidelines -- suggests a higher chance of recidivism than the case's facts indicate.

These rationales for departure accord with the broader purpose of assessing criminal history in the imposition of a sentence, which is based -- in part -- on "empirical research assessing correlates of recidivism and patterns of career criminal behavior." U.S.S.G. ch.4, pt. A, introductory cmt.  In essence, § 4A1.3(b)(1)'s downward departure provision is an attempt to account for scenarios in which a defendant's criminal history score imposes a sentence that is greater than necessary to promote the statutory aims of punishment which 18 U.S.C. § 3553(a)(2) identifies.  The Guidelines in an Application Note to § 4A1.3 provide an example of a scenario in which this downward departure is appropriate: "A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  U.S.S.G. § 4A1.3 cmt. n.3.  This example highlights the general concern that § 4A1.3(b)(1)'s downward departure provision seeks to address, namely: a defendant who appears less likely to reengage in criminal wrongdoing -- because of a large lapse in time between instances of criminal wrongdoing -- but who has the same criminal history category as defendant who has the same convictions in a more recent timeframe.

A defendant like the one described in the Application Note -- with such a long period between instances of criminal behavior -- arguably would pose a lesser risk to the public of committing further crimes and also might lack the need for the more robust deterrent effect that a higher sentence would seek to achieve.  More generally, the grounds for departure found in § 4A1.3(b)(1) comport with the Background commentary to § 4A1.3, which notes that "[t]his policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur."  U.S.S.G. § 4A1.3 cmt. background.  However, the Background commentary also indicates that departures from a

defendant's criminal history score based on the inadequacy of the criminal history category pursuant to § 4A1.3 are "limited."  U.S.S.G. § 4A1.3 cmt. background.

The Court is not convinced that Teston's criminal history score is "over-represent[ed]" in the manner which § 4A1.3(b)(1) contemplates.  In his Sentencing Objections, Teston argues that his criminal history is over-represented because, his present offense -- for unlawful conduct involving a destructive device -- categorically is unrelated to the lion's share of his criminal history, which involves drug-related offenses.  Sentencing Objections at 3-4.  While it may be true that Teston's criminal conduct in the present offense is of a somewhat novel character when compared with his prior criminal convictions, see PSR ¶¶ 27-39, at 7-12, the Court is not persuaded that this is the "over-represent[ation]" that the Commission had in mind when it promulgated § 4A1.3(b)(1).  As the previous discussion suggests, a downward departure under § 4A1.3(b)(1) is appropriate in limited circumstances where a criminal history computation leads to an inflated criminal history score that suggests a sentence that is greater than necessary to achieve the statutory purposes of sentencing.  See 18 U.S.C. § 3553(a)(2).  Here, as the United States notes, Teston's criminal history is "consistent," Response at 3, and thus -- based on the empirical statistics that underlie the Guidelines' approach towards criminal history, see U.S.S.G. ch.4, pt. A, introductory cmt. -- he has a "high likelihood of recidivism."  Response at 3.  Moreover, Teston's criminal history is not solely drug-related: he has a past conviction for felony aggravated assault with a deadly weapon.  The Court thus agrees with the United States' assessment and concludes that the mere fact that Teston's present crime is unlike his prior convictions does not mean that his "criminal history category substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes."  U.S.S.G. § 4A1.3(b)(1).

Accordingly, the Court denies the request for a downward departure.  While the Guidelines certainly authorize a downward departure when the criminal history score over-represents a defendant's criminal history, see § 4A1.3(b)(1), the Court concludes that a departure is not warranted under the case's facts and circumstances.  On a basic level, the Court is having a hard time squaring Teston's request for a downward departure based on over-representation with his lengthy criminal record -- replete with drug offenses and felony aggravated assault with a deadly weapon.  In any case, the Court chooses not to depart, because the Court concludes that a departure is unwarranted under the case's facts and circumstances.  Unfortunately, the nation's federal prisons contain many incarcerated people who have criminal histories similar to Teston's.  The Court struggles to distinguish Teston's case from the many others that come before the Court, before this District, and before the other federal courts across the nation.  The Court concludes that the case fits squarely in the heartland of typical cases in the Guidelines with respect to the calculation of Teston's criminal history score.   See Koon v. United States, 518 U.S. at 92. Accordingly, even though the Guidelines authorize a departure for over-representation of criminal history, even if the case's facts and circumstances warrant a departure -- which they do not -- the Court exercises its discretion not to depart, because Teston's case remains a heartland case. Accordingly, the Court denies Teston's request for a departure on the basis of § 4A1.3(b)(1). Teston remains free to argue for a variance on these grounds, however, and the Court will evaluate that request at the sentencing hearing.

In addition, Teston argues that the Court should depart downward on Teston's criminal history score -- in part -- "given the upcoming change in the law."  Sentencing Objections at 4. The PSR calculates Teston's total criminal history score at 16, see PSR ¶ 42, at 12, which includes 14 points for his prior criminal convictions and an added 2 points under the former version of

U.S.S.G. § 4A1.1(d), because his crime was committed "while under a criminal justice sentence for Possession of a Controlled Substance in State of New Mexico Ninth Judicial District Court," PSR ¶ 41, at 12. See U.S.S.G. § 4A1.1(d) (2018) (U.S. Sent'g Comm'n, amended 2023)("Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status"). However, the recent amendments to the Guidelines, which became effective on November 1, 2023, alter the committed-while-under-any-criminal-justice-sentence provision of § 4A1.1 to state: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d) [of U.S.S.G. § 4A1.1], and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e).[8]   Accordingly, the amended Guidelines limit the overall impact of the committed-while-under-any-criminal-justice-sentence points by: (i) adding only 1 point instead of 2; and (ii) limiting the application of the added point to defendants who already have a relatively substantial criminal history score -- viz., 7 or higher according to the other § 4A1.1 provisions. Consequently, under the current, amended version of the Guidelines, Teston's criminal history score would reduce by 1 point: He would not be subject to the 2 point increase under the former § 4A1.1(d), but he would be subject to the 1 point increase under U.S.S.G. § 4A1.1(e).

---

[8]The Court notes that the amended Guidelines reorganize U.S.S.G. § 4A1.1 such that the committed-while-under-any-criminal-justice-sentence provision of § 4A1.1 is now codified at subsection (e) instead of subsection (d).   According to the Commission's "Reason for Amendment," this change was made for ease of application, moving the former subsection (e) -- which addresses multiple crimes of violence treated as a single sentence -- to subsection (d).   See U.S. Sent'g Comm'n, Amendment to the Sentencing Guidelines at 50, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf   (last visited November 1, 2023).

As this argument relates to Teston's criminal history category, however, Teston notes the PSR calculates this criminal history category as VI, see PSR ¶ 42, at 12, and that "the same outcome is reached even if Mr. Teston were to be subject to the revised section 4A1.1(d)." Sentencing Objections at 4.  Indeed, the Court agrees that, although the current updated version of the Guidelines decreases Teston's criminal history score by 1 point, his criminal history category -- VI -- remains the same whether he has 16 or 15 criminal history points.  See U.S.S.G. ch.5, pt. A.  Accordingly, to the extent that Teston's comment regarding "the upcoming change in the law" is construed as a request for a downward departure, the Court denies the request. Sentencing Objections at 4.  The current, amended version of § 4A1.1 reflects that the Commission maintains concern about defendants with high criminal history scores who commit criminal wrongdoing while under a criminal justice sentence.  Teston remains free to argue for a variance, however, which the Court will consider at the sentencing hearing.

### III.   THE COURT DENIES TESTON'S REQUEST FOR A DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K2.20(b), BECAUSE HIS CONDUCT IN THE PRESENT OFFENSE WAS NOT "ABERRANT BEHAVIOR" AS THE PROVISION CONTEMPLATES THAT PHRASE.

Teston argues that his behavior was "aberrant" and thus a downward departure is warranted.  Sentencing Objections at 4-5.  Although he does not cite a specific Guidelines provision to support this contention, his description of this behavior as "aberrant" leads the Court to believe that this argument is anchored in U.S.S.G. § 5K2.20, which provides for a downward departure -- subject to various restrictions -- on the basis of "[a]berrant [b]ehavior."  Section 5K2.20 instructs that, except in the case of certain convictions,[9] "a downward departure may be

---

[9]Namely, "an offense involving a minor victim under section 1201, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code." U.S.S.G. § 5K2.20(a).

warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b) [of § 5K2.20]; and (2) the departure is not prohibited under subsection (c) [of § 5K2.20]."  U.S.S.G. § 5K2.20(a).  Subsection (b) of § 5K2.20 reads: "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20(b).  Subsection (c), in turn, reads:

> The court may not depart downward pursuant to this policy statement if any of the following circumstances are present:
>
> (1)    The offense involved serious bodily injury or death.
>
> (2)    The defendant discharged a firearm or otherwise used a firearm or a dangerous weapon.
>
> (3)    The instant offense of conviction is a serious drug trafficking offense.
>
> (4)    The defendant has either of the following: (A) more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood) before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category); or (B) a prior federal or state felony conviction, or any other significant prior criminal behavior, regardless of whether the conviction or significant prior criminal behavior is countable under Chapter Four.

U.S.S.G. § 5K2.20(c).  Finally, an Application Note to § 5K2.20 provides other circumstances to consider: "In determining whether the court should depart under this policy statement, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."  U.S.S.G. § 5K2.20 cmt. n.3.

Here, Teston does not address any of these various factors -- whether those in § 5K2.20(b) or in the Application Note -- in his request for a downward departure based on aberrant behavior. Instead, he argues for his own idiosyncratic understanding of behavioral aberrance, namely, that, because his present offense is so unlike the rest of his criminal history, a downward departure is warranted under the Guidelines. See Sentencing Objections at 4-5. This argument looks familiar; indeed, it is substantially similar to his previous argument regarding over-representation. In any event, the Court does not believe that this particular understanding of aberrant behavior accords with § 5K2.20's plain language, which contemplates aberrant behavior as a short, spur-of-the-moment incident that "represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b). Section 5K2.20's text says nothing about a single criminal conviction that contrasts -- categorically -- from the rest of a defendant's criminal history.

Moreover, when looking at the factors that § 5K2.20 enumerates, the conduct underlying Teston's current conviction is not aberrant in the manner that the provision describes: the making of a homemade destructive device more likely than not requires "significant planning," § 5K2.20(b), and -- as his high criminal history score illustrates -- Teston's offense is not "a marked deviation by the defendant from an otherwise law-abiding life," § 5K2.20(b). Likewise, § 5K2.20(c) states that "[t]he court may not depart downward" if the defendant has "more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Livelihood) before application of subsection (b) of §4A1.3," § 5K2.20(c)(4)(A), or has "a prior federal or state felony conviction, or any other significant prior criminal behavior, regardless of whether the conviction or significant prior criminal behavior is countable under Chapter Four," § 5K2.20(c)(4)(B). All of these factors cut against Teston's argument for a downward departure on the basis of aberrant behavior.

The Court will, therefore, deny Teston's request for a downward departure based on aberrant behavior.  As discussed above, while the Guidelines clearly authorize a downward departure for aberrant behavior, the Court concludes that a departure on this basis is not warranted under the case's facts and circumstances.  In the Court's view, Teston's proffered version of aberrant behavior -- i.e., that his present offense is of a novel character when compared to his past convictions -- does not sufficiently take into account his lengthy criminal record and the associated risks of recidivism.  The Court notes again that, unfortunately, the nation's federal prisons contain many individuals with lengthy criminal histories who come up with novel ways of committing unlawful acts.  The Court is accordingly unable to distinguish Teston's case from the many cases that come before the Court, the District, and federal courts throughout the nation.  With respect to this request for departure, the Court concludes that Teston's case fits within the heartland of cases that the Guidelines describe.  Thus, even though the Guidelines authorize a downward departure for aberrant behavior, and even if a departure were warranted under the case's facts and circumstances -- which it is not -- the Court still exercises its discretion to not depart, because the Court is convinced that Teston's case remains a heartland case.

Having considered carefully Teston's Sentencing Objections, the Court denies Teston's requests for departure.  First, as discussed in Section I of the Analysis, the PSR does not engage in impermissible double-counting, as the Guidelines explicitly endorse the approach that the PSR uses, see U.S.S.G. § 2K2.1 cmt. n.7, and, in any event, the two uses of the "destructive device" in Teston's case -- to calculate the BOL and then enhance it under U.S.S.G. § 2K2.1(b)(3)(B) -- do not necessarily overlap, are not indistinct, and do not serve identical purposes.  See United States v. Terrell, 608 F.3d at 683.  Moreover, the enhancement in Teston's case does not violate the Double Jeopardy Clause, because the enhancement is not punishment for double jeopardy

purposes.  See Witte v. United States, 515 U.S. at 402-03.  In Section II of the Analysis, the Court denies Teston's request for a departure under U.S.S.G. § 4A1.3, as the Court concludes that Teston's criminal history score is not over-represented in the manner that provision contemplates; and even if Teston's criminal history is over-represented, the Court exercises its discretion not to depart on that basis given Teston's considerable criminal history.  Last, in Section III of the Analysis, the Court denies Teston's request for a departure on the basis of U.S.S.G. § 5K2.20's "aberrant behavior" policy statement, because the Court concludes that Teston's unlawful conduct is not "aberrant" in the manner that provision contemplates; and even if his new crime is aberrant, the Court exercises its discretion not to depart on that basis given Teston's considerable criminal history.  The Court subtracts, however, one point from Teston's criminal history score because of the current, updated Guidelines provision at U.S.S.G. § 4A1.1(e).  Even with this deduction, however, Teston's criminal history category remains at VI and thus does not affect his Guidelines range.  As for Teston's requests for a variance from the Guidelines, the Court will entertain any such arguments at the sentencing hearing.

IT IS ORDERED that the Defendant's Objections to Presentence Report, filed August 9, 2023 (Doc. 121), are overruled.

UNITED STATES DISTRICT JUDGE

Counsel:

Alexander M.M. Uballez
  United States Attorney
Maria Ysabel Armijo
Christopher McNair
  Assistant United States Attorneys

United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Stephen A. Taylor
Martin Juarez
Assistant Federal Public Defenders
Office of the Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*